PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4170**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

JAMES ROBERT COBLER,

             Defendant - Appellant.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Michael F. Urbanski,
District Judge.   (5:12-cr-00026-MFU-JGW-1)

Argued:  January 29, 2014          Decided:  April 11, 2014

Before DUNCAN, KEENAN, and WYNN, Circuit Judges.

Affirmed by published opinion.   Judge Keenan wrote the opinion,
in which Judge Wynn joined.   Judge Duncan wrote a separate
opinion concurring in the judgment.

**ARGUED**: Christine Madeleine Lee, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Roanoke, Virginia, for Appellant.   Jean Barrett
Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville,
Virginia, for Appellee.   **ON BRIEF**: Larry W. Shelton, Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke,
Virginia, for Appellant.   Timothy J. Heaphy, United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke,
Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the constitutionality and the reasonableness of a 120-year sentence imposed on a defendant convicted of production, possession, and transportation of child pornography, in connection with his sexual molestation of a four-year-old boy. The defendant argues that his lengthy prison sentence is disproportionate to his crimes, constituting cruel and unusual punishment under the Eighth Amendment, and that the sentence is greater than necessary to achieve legitimate sentencing goals. Upon our review, we reject the defendant's constitutional challenge and conclude that the district court did not abuse its discretion in imposing a sentence designed to protect the public and to address the seriousness of the defendant's crimes. Accordingly, we affirm.

I.

In April 2012, undercover police investigators identified a computer belonging to James Robert Cobler (Cobler) as a source of child pornography on the Internet. After obtaining a warrant and searching Cobler's home in Winchester, Virginia, investigators found numerous images and video recordings depicting the sexual abuse of children.

During an interview with police, Cobler admitted that he had downloaded, possessed, and shared child pornography over the

2

Internet using a "peer-to-peer" file-sharing network. Cobler also confessed that he had sexually molested a four-year-old boy on four separate occasions while acting as the child's babysitter, and had photographed and filmed his sexual encounters with the child. Cobler, a 28-year-old man in poor health who is afflicted by a serious communicable disease, admitted that at the time he molested the child, he was aware of the possibility that his disease could be transmitted to the child by sexual contact.

Cobler pleaded guilty to three counts of production of child pornography, see 18 U.S.C. § 2251(a) and (e), one count of transportation of child pornography in interstate commerce, see 18 U.S.C. § 2252(a)(1) and (b)(1), and one count of possession of child pornography, see 18 U.S.C. § 2252(a)(4)(B) and (b)(2). The United States Probation Office prepared a Presentence Report (PSR), in which the probation officer concluded that although Cobler lacked any prior convictions, the severity of his offenses warranted an initial advisory guidelines term of life imprisonment. However, because none of Cobler's criminal charges provided for a sentence of life imprisonment, Cobler's guidelines sentence ultimately was calculated to be 1,440 months, or 120 years, which represented the sum of the statutory maximum sentences available for each count of conviction.

Cobler did not object to the district court's adoption of the PSR calculations.

At the sentencing hearing, Cobler requested a significant downward variance from the applicable guidelines, based in part on his grave medical condition and short life expectancy, as well as his lack of criminal history. The government argued that a guidelines sentence was justified, and that it would deter others from committing similar crimes.

After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court decided that there was "no reason to vary from the guidelines in this case" and imposed a sentence of 120 years' imprisonment. Cobler filed a timely appeal, challenging the constitutionality and the reasonableness of his sentence.

## II.

Cobler argues that his 120-year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because the sentence is disproportionate to the severity of his crimes, a question that we review de novo. See United States v. Meyers, 280 F.3d 407, 416 (4th Cir. 2002) (citation omitted). Cobler asks that we revisit some of our recent precedent, which he argues improperly suggests that this Court need not review his constitutional challenge because

4

proportionality review of any sentence less than life imprisonment without parole is "not available," "not appropriate," or "not required."  See United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001) ("[P]roportionality review is not available for any sentence less than life imprisonment without the possibility of parole."); see also United States v. Lockhart, 58 F.3d 86, 89 (4th Cir. 1995) (stating that proportionality review "is not appropriate" for any such sentence); United States v. Polk, 905 F.2d 54, 55 (4th Cir. 1990) (observing that the Supreme Court "does not require" proportionality review of such sentences); United States v. Whitehead, 849 F.2d 849, 860 (4th Cir. 1988) (same); United States v. Guglielmi, 819 F.2d 451, 457 (4th Cir. 1987) (same). Before addressing these arguments, we examine the analytical framework for proportionality challenges established by the Supreme Court.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. Punishment is deemed cruel and unusual not only when it is "inherently barbaric," but also when it is disproportionate to the crime for which it is imposed. Graham v. Florida, 560 U.S. 48, 59 (2010); see Weems v. United States, 217 U.S. 349, 367

(1910) (referring to the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense").

A defendant may challenge the proportionality of a sentence under the Eighth Amendment in two different ways. Under an "as-applied" challenge, a defendant contests the length of a certain term-of-years sentence as being disproportionate "given all the circumstances in a particular case." Graham, 560 U.S. at 59. In a "categorical" challenge, a defendant asserts that an entire class of sentences is disproportionate based on "the nature of the offense" or "the characteristics of the offender." Id. at 60. In this appeal, Cobler argues that his prison sentence is constitutionally infirm under both these approaches.

The Supreme Court has emphasized the limited scope of both types of proportionality challenges. In the context of an as-applied challenge, the Court has explained that the "narrow proportionality principle" of the Eighth Amendment "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." Graham, 560 U.S. at 59-60 (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy, J., concurring)) (internal quotation marks omitted). Before an appellate court concludes that a sentence is grossly disproportionate based on an as-applied challenge, the court first must determine that a "threshold comparison" of the

6

gravity of the offense and the severity of the sentence "leads to an inference of gross disproportionality." Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring)) (brackets omitted). In the "rare case" that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. Id. If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed "cruel and unusual" punishment under the Eighth Amendment. Id.

The Supreme Court has identified a term-of-years sentence as being grossly disproportionate on only one occasion. In Solem v. Helm, 463 U.S. 277 (1983), a recidivist defendant had been sentenced to life imprisonment without parole for passing a bad check in the amount of $100. In reviewing the defendant's Eighth Amendment challenge to his sentence, the Court identified the following "objective criteria" to be used in conducting a full proportionality analysis: (1) "the gravity of the offense and the harshness of the penalty;" (2) "the sentences imposed on other criminals in the same jurisdiction;" and (3) "the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292. Because the bad check crime was "one of the most passive felonies a person could commit" and the

7

punishment was "the most severe" non-capital sentence available, the Court inferred that the defendant's sentence was grossly disproportionate. Id. at 296-97. Accordingly, the Court conducted an extended proportionality review, engaging in a comparative analysis of other penalties and other jurisdictions, and concluded that the defendant's sentence was unconstitutional. Id. at 296-300.

Since the decision in Solem, no defendant before the Supreme Court has been successful in establishing even a threshold inference of gross disproportionality. See, e.g., Ewing v. California, 538 U.S. 11 (2003); Harmelin, 501 U.S. 957; Hutto v. Davis, 454 U.S. 370 (1982) (per curiam); Rummel v. Estelle, 445 U.S. 263 (1980). Notably, in Harmelin, the Court upheld a life sentence without parole for a first-time felon convicted of possession of 672 grams of cocaine. See 501 U.S. at 961, 996. Justice Kennedy, whose concurrence in Harmelin later was regarded as the "controlling opinion" in that case, Graham, 560 U.S. at 59-60, contrasted the "passive" check fraud in Solem with the "pernicious" drug offenses that "threaten[] to cause grave harm to society" by contributing to "violence, crime, and social displacement." 501 U.S. at 1002-03 (Kennedy, J., concurring).

In another as-applied proportionality challenge, the Supreme Court in Ewing reviewed a prison sentence of 25 years to

life under California's "three strikes" statute,[1] imposed for theft of $1200 in merchandise. 538 U.S. at 19-20. Employing its analysis from Solem, the Court observed that the theft crime was "certainly not 'one of the most passive felonies a person could commit'" and could justify a prison sentence of between 25 years and life imprisonment. Ewing, 538 U.S. at 28 (plurality opinion) (quoting Solem, 463 U.S. at 296); see also Lockyer v. Andrade, 538 U.S. 63 (2003) (affirming, upon habeas review, a sentence under California's "three strikes" law of two consecutive terms of 25 years to life in prison for petty theft of videotapes worth about $150).

In comparison to the as-applied challenges described above, categorical challenges to whole classes of prison sentences also have had very limited success in the Supreme Court. With respect to a categorical challenge, the reviewing court first

---

[1] California's three strikes law was designed "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." Cal. Penal Code § 667(b). Under the version of the statute in effect at the time of Ewing, a defendant who had been convicted of two or more prior "serious" or "violent" felonies, and who committed any new felony, must receive "an indeterminate term of life imprisonment." 538 U.S. at 16 (citations and internal quotation marks omitted). In 2012, the three strikes law was amended by Proposition 36, also known as the Three Strikes Reform Act, which among other things required that a defendant's new offense must also be a "serious" or "violent" felony before a defendant would qualify for a life sentence as a third strike offender. See Cal. Penal Code § 1170.126 (allowing resentencing of defendants pursuant to the Three Strikes Reform Act of 2012).

determines whether a "national consensus against the sentencing practice at issue" is evident from "objective indicia of society's standards, as expressed in legislative enactments and state practice." Graham, 560 U.S. at 61. Next, the court exercises its "independent judgment whether the punishment in question violates the Constitution." Id. Thus, a categorical challenge "requires consideration of the culpability of the [class of] offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." Id. at 67.

Before 2010, the Supreme Court had deemed only certain classes of death sentences as being categorically disproportionate. The Court held that capital punishment was unconstitutional under certain circumstances, either because offenders' underlying convictions fell outside the "narrow category of the most serious crimes," see, e.g., Kennedy v. Louisiana, 554 U.S. 407, 420 (2008) (rape), Enmund v. Florida, 458 U.S. 782 (1982) (certain types of felony murder), or because some populations of offenders had diminished personal responsibility for their crimes, such as persons who are intellectually disabled, see Atkins v. Virginia, 536 U.S. 304 (2002), and juveniles, see Roper v. Simmons, 543 U.S. 551 (2005).

10

In recent years, the Court has extended its use of the categorical analysis to a very narrow group of non-capital prison sentences involving juvenile offenders. Employing a categorical analysis, the Court has barred certain sentences of life imprisonment without parole for juveniles. See Graham, 560 U.S. 48 (prohibiting life imprisonment without parole for juveniles convicted of non-homicide crimes); Miller v. Alabama, 132 S. Ct. 2455 (2012) (barring mandatory life imprisonment without parole for juveniles convicted of homicide crimes). The Court linked its "unprecedented" willingness to reverse non-capital sentences to this narrow, special context of juvenile offenders, for whom a life sentence without parole can be "likene[d] . . . to the death penalty itself," particularly given the reality that a juvenile will spend more of his life in prison than an adult. Miller, 132 S. Ct. at 2466.

Within this limited framework for proportionality review of as-applied and categorical challenges, we turn to consider Cobler's assertion that our Circuit improperly imposes a wholesale restriction against proportionality review for any prison sentence of less than life imprisonment without parole. Cobler bases his assertion on the statements in some of our decisions cited above, which suggested that proportionality review is "not available," "not appropriate," or "not required" for a term-of-years sentence. See supra at 4.

11

Cobler's argument fails, however, because it discounts the full import of our holding in United States v. Rhodes, 779 F.2d 1019 (4th Cir. 1985). It is well-established law in this Circuit that our first case to decide an issue controls later consideration of that same issue, unless it is overruled by this court sitting en banc or by the Supreme Court. McMellon v. United States, 387 F.3d 329, 334 (4th Cir. 2004). And, on the subject of judicial review available for proportionality challenges to term-of-years sentences under the Eighth Amendment, the earliest, controlling case in this Circuit is Rhodes.

In Rhodes, two defendants in a drug conspiracy case asserted as-applied proportionality challenges to their respective prison sentences of 50 and 75 years, arguing that the Supreme Court's decision in Solem entitled them to "extensive proportionality review" of those sentences. Id. at 1026. The Supreme Court held in Solem that the Eighth Amendment principle of proportionality is applicable generally to the review of non-capital felony prison sentences, and that "no penalty is per se constitutional." 463 U.S. at 288-90. The Court further emphasized, however, that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." 463 U.S. at 290 n.16 (emphasis added). Additionally, the Court explained

12

that proportionality challenges to non-capital sentences rarely will be successful, due to the "substantial deference" that reviewing courts owe to Congress and to trial courts. Id. at 289-90; see also Hutto, 454 U.S. at 374 (noting that for felony crimes, because there is "no clear way to make any constitutional distinction between one term of years and a shorter or longer term of years," the "length of the sentence actually imposed is purely a matter of legislative prerogative" and "successful challenges to the proportionality of particular sentences should be exceedingly rare") (citations and internal quotation marks omitted).

In view of this instruction in Solem, we held in Rhodes that "extensive proportionality analysis" is required "only in those cases involving life sentences without parole," or, alternatively, in cases involving "terms of years without parole" that are functionally equivalent to life sentences "because of [the defendants'] ages." 779 F.2d at 1028 (emphasis added). In considering the term-of-years sentences before us in Rhodes, we further explained that additional proportionality analysis generally is not required when "a simple matching of the facts of a particular case against the Solem principles will suffice [to establish the constitutionality of a given sentence] without extended discussion." Id. at 1028-29.

This observation, that the need for an "extended discussion" of proportionality often will be obviated by a "simple matching" of facts to law, essentially presaged Graham's directive that a reviewing court first consider whether there is a "threshold . . . inference" of "gross disproportionality." 560 U.S. at 60 (citation and internal quotation marks omitted). Our decision in Rhodes is also consistent with the Supreme Court's further instruction in Graham that, in the absence of such a "threshold inference," extended comparative analysis of a sentence is unnecessary to justify its constitutionality. Id. Thus, in contrast to some of our later decisions, Rhodes did not hold that judicial review of proportionality challenges to term-of-years sentences is "not available," "not appropriate," or "not required."

Under the first-in-time precedential authority of Rhodes, any later decisions in this Circuit that imprecisely have characterized Rhodes's discussion of proportionality review are not controlling.[2]  See McMellon, 387 F.3d at 334.  Thus, we take

---

[2] Some of our colleagues already have observed that Ming Hong's statement that proportionality review is available only in limited circumstances is not "good law," although they have expressed different opinions regarding the precise way to resolve our conflicting cases.  For example, some have suggested that en banc review is necessary to resolve a conflict in our cases.  See, e.g., United States v. Hashime, 722 F.3d 572, 574 (4th Cir. 2013) (Gregory, J., concurring in denial of reh'g en banc).  Another colleague has expressed the view that in Polk (Continued)

14

the opportunity here to reaffirm the vitality of Rhodes and of the cases that accurately have applied its holding. See, e.g., United States v. Wellman, 663 F.3d 224, 231 (4th Cir. 2011) (noting the observation in Rhodes that "extensive proportionality analyses are only required in those cases involving life sentences without the possibility of parole," and that "lesser sentences that are clearly within the prerogative of Congress and subject to imposition by a district court may be disposed of swiftly"); Sutton v. Maryland, 886 F.2d 708, 712 (4th Cir. 1989) (doubting, based on Rhodes, whether using all of the Solem factors in a proportionality analysis is necessary where "[c]learly, the gravity of the [assault] offense and the circumstances of the crime justify a fifteen year sentence").

We further observe that our dictum in cases such as Ming Hong stands in conflict with the Supreme Court's modern proportionality jurisprudence. As the Court stated in Solem, "no penalty is per se constitutional," and even "a single day in

---

and in other cases since Rhodes, we established that proportionality review of prison sentences less than life imprisonment without parole is "not required" and therefore is discretionary. United States v. Hashime, 734 F.3d 278, 286-88 (4th Cir. 2013) (King, J., concurring). However, because none of these later cases purported to amplify the holding in Rhodes, and because Rhodes articulated the law of this Circuit and anticipated the Supreme Court's adoption of a clear structure for proportionality review in Graham, we regard Rhodes as the touchstone for our analysis and need not consider the above efforts to reconcile our later cases.

15

prison may be unconstitutional in some circumstances." 463 U.S. at 290. In Graham, the Court clarified that when a defendant challenges the proportionality of a term-of-years sentence, courts "must begin by comparing the gravity of the offense and the severity of the sentence." 560 U.S. at 60. These decisions afford constitutional protection to every prison sentence, and compel us to review challenges to such sentences for proportionality under the Eighth Amendment.[3]

We therefore turn to consider the merits of Cobler's as-applied proportionality challenge. The first step in our

---

[3] We disagree with our esteemed concurring colleague's view that revisiting our dictum in cases such as Ming Hong is "unnecessary" because "[a] finding that proportionality analysis is available is scarcely outcome determinative" given the severity of Cobler's crimes. Post at 25. Indeed, Ming Hong and some of our other cases did not merely concern the applicability of a mode of "analysis," but wrongly suggested that any judicial "review" of proportionality challenges "less than life imprisonment without the possibility of parole" would be foreclosed. See Ming Hong, 242 F.3d at 532. Such a sweeping prohibition conflicts with our decision in Rhodes and "seems plainly incorrect in light of the Supreme Court's observation in Solem that 'no penalty is per se constitutional,'" as one of our sister circuits already has observed. United States v. Kidder, 869 F.2d 1328, 1333 n.5 (9th Cir. 1989) (quoting Solem, 463 U.S. at 290). Our recognition of this conflict is necessary because the Supreme Court's statement in Graham that proportionality review applies to "a sentence for a term of years," 560 U.S. at 60, does not independently supersede our dictum in Ming Hong limiting such review to life sentences, given that the Supreme Court construes the phrase "term of years" to include a life sentence. See, e.g., Graham, 560 U.S. at 70 (noting that Solem, which involved a sentence of life imprisonment without parole, was "the only previous case striking down a sentence for a term of years as grossly disproportionate").

16

analysis requires us to decide whether a threshold comparison of the gravity of Cobler's offenses and the severity of his sentence leads us to infer that his sentence is grossly disproportionate to his crimes. Id.

Given the shocking and vile conduct underlying these criminal convictions, we hold that Cobler has failed to substantiate the required threshold inference of gross disproportionality. Even assuming, without deciding, that Cobler's 120-year term of imprisonment is functionally equivalent to a sentence of life imprisonment without the possibility of parole,[4] we conclude that Cobler's multiple child pornography crimes are at least as grave as the drug offense in Harmelin, which the Supreme Court deemed sufficiently egregious to justify a similar sentence. See 501 U.S. at 996.

---

[4] The Supreme Court has not yet decided the question whether a lengthy term-of-years sentence is, for constitutional purposes, the same as a sentence of life imprisonment without the possibility of parole. See, e.g., Lockyer, 538 U.S. at 74 n.1 (noting the argument that it is "'unrealistic' to think that a sentence of 50 years to life for [a 37-year-old defendant] is not equivalent to life in prison without parole," but stating only that "[t]wo different sentences do not become materially indistinguishable based solely upon the age of the persons sentenced"); Bunch v. Smith, 685 F.3d 546, 552 (6th Cir. 2012) (recognizing the controversy amongst state and federal courts regarding whether Graham's categorical rule "only applies to juvenile nonhomicide offenders expressly sentenced to 'life without parole'" or also extends to juvenile offenders sentenced to "consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy").

17

As a general matter, the prohibition of child pornography derives from a legislative judgment that such materials are harmful to the physiological, emotional, and mental health of children, and that preventing the sexual exploitation of this uniquely vulnerable group "constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757-58 (1982). We further observe that the usual severity of conduct of this nature is far exceeded by the particular circumstances of this case. Not only did Cobler possess large quantities of child pornography that he downloaded and shared on the Internet, fueling the public consumption of materials harmful to children, but he also created depictions of his own sexual exploitation, molestation, and abuse of a four-year-old child. To make matters worse, Cobler was aware that his sexual contact with the child could have caused the child to contract Cobler's serious communicable disease. Far from being "one of the most passive felonies a person could commit," Solem, 463 U.S. at 296, Cobler's heinous acts exploited, injured, and inflicted great harm on a most vulnerable victim.

Accordingly, we conclude that the relationship between the gravity of Cobler's offenses and the severity of his punishment fails to create the threshold inference of gross disproportionality that is required to maintain a successful as-applied challenge to a criminal sentence under the Eighth

18

Amendment. We also observe that other courts have reached similar results in child pornography cases in which sentences of life imprisonment were imposed. See, e.g., United States v. McGarity, 669 F.3d 1218, 1255-57 (11th Cir. 2012) (holding that life sentences for seven defendants involved in a child pornography ring were not grossly disproportionate under the Eighth Amendment); United States v. Paton, 535 F.3d 829, 837-38 (8th Cir. 2008) (upholding constitutionality of a defendant's life sentence for five counts of producing child pornography).

We conclude that Cobler's categorical challenge likewise lacks merit. The present case involves neither a sentence of death nor a sentence of life imprisonment without parole for a juvenile offender, the only two contexts in which the Supreme Court categorically has deemed sentences unconstitutionally disproportionate. Cf. Graham, 560 U.S. at 60-62. To the extent that this 28-year-old defendant argues that his developmental immaturity categorically requires that he be treated more leniently as a juvenile, we reject that argument at the outset given the complete lack of evidence in the record regarding any national consensus about how immature adults should be sentenced for child pornography crimes. See United States v. Reingold, 731 F.3d 204, 215 (2d Cir. 2013) (stating that even if the defendant was a "developmentally immature young adult" at the time of the crime, that assessment "hardly supports categorical

19

rule analysis" in the absence of any consensus regarding the sentencing of immature adults). Moreover, we decline to substitute a subjective judgment about the relative immaturity of a particular defendant for the objective age of minority that the Supreme Court has used as the benchmark for its categorical analysis of young offenders. See Roper, 543 U.S. at 574 (stating that even though "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," a line for death eligibility "must be drawn" at the age "where society draws the line for many purposes between childhood and adulthood"); see also Reingold, 731 F.3d at 215 (observing that "immaturity, unlike age, is a subjective criterion, ill suited to the pronouncement of categorical rules"). Because we find no merit in Cobler's as-applied and categorical proportionality challenges, we conclude that his sentence of 120 years' imprisonment does not constitute cruel and unusual punishment under the Eighth Amendment.

## III.

Cobler also challenges the reasonableness of his sentence, which we review for abuse of discretion. United States v. McManus, 734 F.3d 315, 317 (4th Cir. 2013) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). We first assess whether the district court committed any significant procedural error,

20

such as "failing to calculate (or improperly calculating) the [g]uidelines range, treating the [g]uidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51. Next, we consider the substantive reasonableness of the sentence based on the totality of the circumstances. Id.

We do not detect any significant procedural error in this case. The district court properly determined the guidelines range, considered and discussed the Section 3553(a) factors, and articulated reasons for the sentence imposed. Cobler maintains, nevertheless, that the court erred by referring in its "statement of reasons" to the allegedly erroneous fact that Cobler recorded his "rape" of his four-year-old victim. However, based on our review of Cobler's admissions to police investigators, we reject Cobler's argument and agree with the government that the district court did not err in characterizing Cobler's sexual contact with the child as "rape."

Having determined that the sentencing court did not commit significant procedural error, we next evaluate whether Cobler's sentence is substantively reasonable. In considering the substantive reasonableness of a sentence, we review whether the district court abused its discretion in determining that the

21

factors contained in Section 3553(a) supported the sentence. See id. at 56.

A sentence that falls within a properly calculated guidelines range is presumptively reasonable. United States v. Allen, 491 F.3d 178, 193 (4th Cir. 2007). Cobler challenges the presumptive reasonableness of his within-guidelines sentence, arguing that the sentence was greater than necessary to address the sentencing factors set forth in Section 3553(a). In particular, Cobler contends that the district court abused its discretion by relying upon the factor of deterrence in setting the sentence, especially given Cobler's grave medical condition and diminished life expectancy, and by ultimately fashioning a sentence unique in its severity for the type of sex crimes at issue in this case. See 18 U.S.C. § 3553(a)(2) (referring to the need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"); 18 U.S.C. § 3553(a)(6) (noting the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

After reviewing the record, we conclude that Cobler's arguments fail to defeat the presumption that his within-guidelines sentence is substantively reasonable. The district court explicitly considered the need for Cobler's sentence to deter others from engaging in what the court considered "the

22

most serious and egregious conduct." Cognizant that it was imposing a term of imprisonment that effectively would be a "life sentence," the court reasoned that it could not "imagine a situation where [the court] can allow the defendant back into the public" given that the case involved not only child pornography, but actual sexual abuse of a four-year-old victim that was aggravated by the defendant's knowledge that the victim could have become infected with a serious communicable disease.

We cannot conclude that the district court abused its discretion in reaching this decision. Furthermore, we observe that other courts have upheld similar sentences. See, e.g., United States v. Demeyer, 665 F.3d 1374, 1375 (8th Cir. 2012) (affirming the reasonableness of a 120-year, within-guidelines sentence composed of consecutive 30-year prison terms for sexual exploitation of a minor, and noting that the district court did not abuse its "discretion to impose concurrent or consecutive sentences for the multiple counts of conviction in order to ensure that [the defendant] would in fact serve a life sentence"); United States v. Noel, 581 F.3d 490, 500-01 (7th Cir. 2009) (affirming an 80-year, below-guidelines prison sentence for production and possession of child pornography as reasonable); United States v. Sarras, 575 F.3d 1191, 1219-21 (11th Cir. 2009) (affirming a within-guidelines sentence of 100 years' imprisonment as substantively reasonable given that

23

"[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses"); United States v. Betcher, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding the reasonableness of a 750-year prison sentence for production, receipt, and possession of child pornography); United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding the reasonableness of a 140-year, within-guidelines prison sentence for production and distribution of child pornography).

Accordingly, we conclude that the district court imposed a sentence that reflects the nature and the circumstances of the offense, as well as the other considerations of Section 3553(a). We therefore hold that the sentence is substantively reasonable.

IV.

For these reasons, we affirm the district court's judgment.

AFFIRMED

DUNCAN, Circuit Judge, concurring in the judgment:

With great respect for the majority's thoughtful opinion, I am of the view that this appeal can (and therefore should) be decided more simply and without finding an irreconcilable conflict between two of our prior opinions. I therefore concur in the judgment.

First, as the majority correctly acknowledges, its analysis is ultimately unnecessary. A finding that proportionality analysis is available is scarcely outcome determinative here, because Cobler's conduct was sufficiently grave to have justified even a life sentence without the possibility of parole. See supra p. 17.

Further, I remain unpersuaded that United States v. Rhodes, 779 F.2d 1019 (4th Cir. 1985), is so inconsistent with United States v. Ming Hong, 242 F.3d 528 (4th Cir. 2001), as to meet the high standard of "irreconcilable conflict" required by McMellon v. United States, 387 F.3d 329, 334 (4th Cir. 2004). Rhodes merely held that Solem v. Helm, 463 U.S. 277 (1983), "requires an extensive proportionality analysis only in those cases involving life sentences without parole." 779 F.2d at 1028. Strictly speaking, our holding in Ming Hong that "proportionality review is not available" for a term-of-years sentence, 242 F.3d at 532, is not inconsistent with our holding

in Rhodes that extensive proportionality analysis is not required in such a case.

The majority points out that the panel in Rhodes went on to apply a limited form of proportionality review to the sentences at issue. But it did so having assumed, arguendo, that the sentences were equivalent to life sentences without the possibility of parole. See Rhodes, 779 F.2d at 1028.

While I cannot agree that Ming Hong conflicts with our prior precedent, I nevertheless find it to be clearly inconsistent with, and therefore superseded by, the Supreme Court's holding in Graham v. Florida, 560 U.S. 48, 59-60 (2010) ("[In] determining whether a sentence for a term of years is grossly disproportionate . . . . [a] court must begin by comparing the gravity of the offense and the severity of the sentence.")

I therefore respectfully concur in the judgment.

26