48

# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Julio Saravia

July 22, 2015

Case No. FE-2014-1050

BY JUDGE DANIEL E. ORTIZ

Julio Saravia came before this Court for sentencing on June 19, 2015. In addition to his presentation on sentencing, Counsel for Defendant submitted a motion, arguing that the mandatory punishment of life in prison for his convictions under Virginia Code § 18.2-61(B)(2) was unconstitutional under the Eighth Amendment to the United States Constitution and Article I, Section 9, of the Virginia Constitution. At sentencing and after oral argument, this Court denied Defendant's Motion. This letter opinion further articulates the Court's reasoning.

## I. *Factual Background*

Defendant, who was thirty years old at the time of the crime, was charged with rape after he admitted to having sexual intercourse with his twelve year old daughter on multiple occasions. After a multi-day trial, the jury convicted the Defendant of five counts of raping a minor under the age of thirteen in violation of Virginia Code § 18.2-61(A)(iii). The General Assembly has determined that the punishment for this offense "shall include a mandatory minimum term of confinement for life." Va. Code § 18.2-61(B)(2). After receiving the Court's instructions, the jury recommended five terms of life in prison.

## II. *Summary of Arguments*

Defendant argues that the mandatory life sentence imposed upon him is a cruel and unusual punishment in violation of the U.S. and Virginia Constitutions. Specifically, he argues that, under the "proportionality" test approved by six justices of the United States Supreme Court in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), the

mandatory punishment is not proportionate to the gravity of the offense and is severe when compared to the punishment for similar crimes in other jurisdictions and with other sentences imposed by the Commonwealth.

The Commonwealth maintains that the statute is constitutional under the precedents set forth by the U.S. Supreme Court regardless of which proportionality test is utilized. The Commonwealth argues that the severe nature of a life sentence is what the legislature intended for the heinous crimes committed by the Defendant.

## III. *Analysis*

Defendant relies primarily on the proportionality test developed by Justice Kennedy in his *Harmelin* concurrence to support the argument that § 18.2-61(B)(2) violates the Eighth Amendment. His reliance is problematic for two reasons: first, the fractured nature of the opinion in *Harmelin* casts doubt as to its precedential value; and second, even accepting Justice Kennedy's test as persuasive, the punishment set forth in § 18.2-61(B)(2) is not disproportionate to the offense. The Court addresses these two issues in turn.

### A. *Precedential Effect of Harmelin*

The U.S. Supreme Court was deeply divided in its *Harmelin* Opinion. The Opinion for the Court, authored by Justice Scalia, was written in four parts. Parts I-III, in which Justice Scalia addressed the issue of whether a proportionality test existed under the Eighth Amendment, was joined only by Chief Justice Rehnquist. *See* 501 U.S. at 960. Part IV of his opinion, the only part of the opinion joined by a majority of five justices, did not address the issue of proportionality in Eighth Amendment jurisprudence. *See id.* at 994-96. Justice Kennedy wrote a concurring opinion, joined by Justices O'Connor and Souter, *see id.* at 996, and Justices White, Marshall, and Stevens wrote dissenting opinions for the remaining four justices. *See id.* at 1009. Defendant urges this Court to focus on the six justices, *i.e.,* those justices joining the Kennedy concurrence and White dissent, who approved of a proportionality test in non-capital cases. Seven justices were ultimately in support of some form of proportionality test. While Justice Marshall did not join Justice White's dissent, he expressed approval of White's proportionality test. *See Harmelin,* 501 U.S. at 1027.

The Supreme Court has held that its concurring opinions can form the basis of binding precedent in limited circumstances. In *Marks v. United States,* 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977), the Court stated that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . ." 430 U.S. at

193 (citation omitted). In the absence of such circumstances, however, a concurrence cannot be treated as binding precedent. *See Maryland v. Wilson,* 519 U.S. 408, 412-13, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997).

*Marks* is not applicable to the *Harmelin* Opinion. In *Harmelin,* Part IV of the opinion "enjoyed the assent" of five justices, thus constituting the holding of the Court. *See Harmelin,* 501 U.S. at 960. There is a "single rationale" of a majority of the Supreme Court that explains the result in *Harmelin.*

Even if this Court were to apply *Marks* to this case, however, it could arguably not consider Justice Kennedy's opinion to be the binding precedent. A *Marks* analysis necessarily requires the Court to determine the "narrowest grounds" for the holding. *Marks,* 430 U.S. at 193. This analysis requires a finding that the concurrence to be applied "is a logical subset of other, broader opinions." *Gibson v. American Cyanamid Co.,* 760 F.3d 600, 619 (7th Cir. 2014). Under this standard, it cannot be said that Justice Kennedy's concurrence was the narrowest. In fact, it is Justice Kennedy's concurrence that is the broader opinion when compared to Part IV of Justice Scalia's Opinion for the Court. Thus, Justice Kennedy's concurrence in *Harmelin* would not be binding even under a *Marks* analysis. *But see Hawkins v. Hargett,* 200 F.3d 1279, 1282 (10th Cir. 1999) (holding that Justice Kennedy's concurrence was the narrowest).

Similarly, this Court cannot, as Defendant urges it to, add the three-justice concurrence and three-justice dissent in *Harmelin* to synthesize a binding precedent supported by six justices. This sort of precedential bootstrapping has been routinely rejected by the federal circuits and does not represent sound interpretation of Supreme Court opinions. *See, e.g., United States v. Anderson,* 771 F.3d 1064, 1069, n. 2 (8th Cir. 2014) (declining to combine Justice Roberts's opinion with the four-justice dissent in the Affordable Care Act case to create binding precedent); *Gibson v. American Cyanamid Co.,* 760 F.3d 600, 619-21 (7th Cir. 2014) (finding that a concurring opinion and a dissenting opinion cannot be found to create binding precedent).

Despite the analysis of the different circuits, the Supreme Court has lent support to the Kennedy concurrence. In *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), Justice Kennedy in passing referred to his previous concurrence in *Harmelin* as "the controlling opinion" of that case. *See* 560 U.S. at 59-60. Furthermore, both federal and Virginia state courts have routinely relied on the Kennedy test in analyzing Eighth Amendment challenges. *See, e.g., United States v. Cobler,* 748 F.3d 570, 575-76 (4th Cir. 2014); *Dunaway v. Commonwealth,* 52 Va. App. 281, 312-13, 663 S.E.2d 117 (2008). In any event, the precedential weight of Justice Kennedy's opinion in *Harmelin* remains an open question.

B. *Application of Proportionality Test from Harmelin Concurrence and Other Cases*

Whether Justice Kennedy's analysis in *Harmelin* is controlling is not critical to a determination in this case. This Court finds his analysis to be persuasive, particularly his reliance on *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). In *Solem*, the Supreme Court held that the Eighth Amendment forbids punishments that are "grossly disproportionate," even in non-capital cases. 463 U.S. at 288. Justice Scalia's effort to overrule *Solem* failed to garner enough votes in *Harmelin*. As a result, *Solem* was not expressly overruled in 1991. This conclusion is bolstered by the Supreme Court's opinion in *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003), in which Justice O'Connor stated that the gross disproportionality principle remains good law, albeit within a "thicket" of confusion. 538 U.S. at 72-73.

This Court is guided by those principles enunciated in *Solem* and reiterated by the concurrence and dissent in *Harmelin*. Applying the proportionality test is challenging, as Justices Kennedy and White disagree sharply on how such a proportionality test functions, even if they agree on its basic premise. There is consensus between Kennedy and White in that the test involves some combination of three factors: (1) a comparison of the gravity of the offense with the severity of the punishment; (2) a comparison of the punishment in the specific jurisdiction with punishments for similar offenses in other jurisdictions (the "interjurisdictional analysis"); and (3) a comparison of the punishment for the specific offense with punishments for other offenses in the same jurisdiction (the "intrajurisdictional analysis"). *See Harmelin*, 501 U.S. at 1004-05 (Kennedy, J., concurring); *id.* at 1019-20 (White, J., dissenting).

Where the two justices depart from each other is the application of the three factors. Justice Kennedy makes the first prong of the test a threshold question, holding that "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1004. This test affords great deference to state legislatures in imposing sentences and creates a narrow proportionality review by the courts. *See id.* at 999.

The *Harmelin* concurrence remains faithful to the standard of review established in *Solem*, in which the Court cautioned that, "[i]n view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *See Solem*, 463 U.S. at 290, n. 16. The reliance on the *Solem* decision enhances the precedential value of Justice Kennedy's analysis, and this Court finds it persuasive.

The Court in *Harmelin* considered a Michigan statute punishing the possession of 650 grams or more of cocaine with mandatory life imprisonment. *See Harmelin*, 501 U.S. at 961, n. 1. In finding that this punishment was not grossly disproportionate, Justice Kennedy contrasted such drug possession with the punishment struck down in *Solem*, which was life imprisonment as a result of uttering a no account check (albeit also coming as a result of the *Solem* defendant's six prior felony convictions). *See id.* at 1002.; *see also Solem*, 463 U.S. at 281-82. In contrast to the utterance of a bad check, which was "one of the most passive felonies a person could commit," *see Harmelin*, 501 U.S. at 1002 (quoting *Solem*, 463 U.S. at 296), the drug possession to the extent the *Harmelin* defendant was prosecuted for "threatened to cause grave harm to society." *See Harmelin*, 501 U.S. at 1002. Justice Kennedy reasoned that drug possession resulted in demonstrated "pernicious effects . . . in terms of violence, crime, and social displacement." *Id.* at 1003. As a result, the severity of the punishment was not grossly disproportionate to the gravity of the offense.

It is notable that, since *Solem*, the Supreme Court has never struck down a particular sentence as grossly disproportionate under the Eighth Amendment. *See Cobler*, 748 F.3d at 576 (listing cases). Furthermore, courts have routinely upheld harsh prison sentences for rape offenses and sexual offenses against children in the face of Eighth Amendment proportionality challenges, including courts in this Commonwealth. *See, e.g., Medici v. Commonwealth*, 1999 Va. App. LEXIS 317 (unpublished) (upholding the Virginia statute penalizing multiple rape offenses with mandatory life imprisonment), *rev'd on other grounds*, 260 Va. 223, 532 S.E.2d 28 (2000); see also *Cobler*, 748 F.3d 570 (upholding a life sentence for child pornography); *Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010) (upholding a life sentence for child molestation against a *Harmelin* challenge); *State v. Oliver*, 812 N.W.2d 636 (Ia. 2012) (holding that a life sentence for the rape of a minor by an adult was not disproportionate); *State v. Buchhold*, 2007 S.D. 15, 727 N.W.2d 816 (rejecting a proportionality challenge to a sentence of forty years in prison for the rape of a minor).

This Court holds that the mandatory life sentence imposed on Defendant is not disproportionate to the gravity of the offense; thus, the Court's inquiry ends at the first prong of the *Harmelin* concurrence test.

Because this Court finds the punishment in § 18.2-61(B)(2) is not grossly disproportionate to the crime, an analysis under the second and third prongs of the *Harmelin* concurrence is not necessary. This is consistent with Justice Kennedy's concurrence in which he declined to move on to the second and third prongs of the test after finding that the first prong was not satisfied. *See* 501 U.S. at 1005 ("In light of the gravity of petitioner's offense, a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence with others in Michigan and across the Nation need not be performed.").

Defendant's crimes are, at the very least, not akin to the "passive" crime struck down in *Solem*, and are just as likely (if not more likely) to "cause grave harm to society" as the drug offense analyzed in *Harmelin*. Courts are in general agreement that such offenses are deserving of serious punishment and have declined to intervene on Eighth Amendment grounds in cases involving life sentences. *See* cases cited *supra*. This Court will do the same.

## IV. *Conclusion*

At age thirty, the Defendant had repeated instances of sexual intercourse with his twelve year old daughter. Such heinous actions are consistent with the General Assembly's rationale for the establishment of a mandatory life sentence. It is not the role of this Court to second guess the judgment of the General Assembly. Accordingly, the sentence set forth under Virginia Code § 18.2-61(B)(2) is not unconstitutional under the Eighth Amendment to the United States Constitution or Article I, Section 9, of the Constitution of Virginia. For the reasons set forth above, Defendant's Motion is denied.