[J-60-2024] [MO: Todd, C.J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered June 13, |
| | : | 2023, at No. 1008 WDA 2021, |
| v. | : | Affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered December 19, 2016, at No. |
| DEREK LEE, | : | CP-02-CR-0016878-2014. |
| | : | |
| Appellant | : | ARGUED: October 8, 2024 |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                                        **DECIDED:  MARCH 26, 2026**

I join the majority opinion.  As the majority persuasively explains, Pennsylvania's sentencing scheme mandating a life sentence without parole for felony murder does not violate the Eighth Amendment to the United States Constitution, but it does violate Article I, Section 13 of the Pennsylvania Constitution, which affords distinct protections in this context.  I write separately to note an additional reason why mandating a life sentence for felony murder does not contravene the Eighth Amendment, and to amplify the majority's analysis of the state constitutional issue.

Beginning with Lee's claim under the Eighth Amendment, he alleges a life sentence for felony murder is "disproportionate" under the United States Supreme Court's decisions "[a]pplying the categorical approach[.]"  Lee's Brief at 54, 57.  As the majority describes, the High Court has developed "two lines of precedent" regarding claims of disproportionate sentencing under the Eighth Amendment.  *Miller v. Alabama*, 567 U.S. 460, 470 (2012).  Under one strand of decisions, "the Court considers all of the

circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Graham v. Florida*, 560 U.S. 48, 59 (2010). In the second line of cases, the Court "has used categorical rules to define Eighth Amendment standards." *Id.* at 60. I agree with the majority that the latter line of cases employing a categorical approach "provides no relief to" Lee. Majority Opinion at 28. The Supreme Court's decisions applying the categorical approach have exclusively involved the death penalty or juvenile offenders sentenced to a mandatory term of life imprisonment. *See Hopkins v. Watson*, 108 F.4th 371, 390 (5th Cir. 2024) ("Critically, the categorical analysis so far has been applied only in cases that involve the death penalty or juvenile offenders sentenced to life in prison."); *United States v. Cobler*, 748 F.3d 570, 580-81 (4th Cir. 2014) ("We conclude that Cobler's categorical challenge likewise lacks merit. The present case involves neither a sentence of death nor a sentence of life imprisonment without parole for a juvenile offender, the only two contexts in which the Supreme Court categorically has deemed sentences unconstitutionally disproportionate."). Moreover, the Supreme Court has emphasized that cases involving the death penalty or juvenile offenders are categorically different for sentencing purposes. *See Solem v. Helm*, 463 U.S. 277, 294 (1983) ("[T]he death penalty is different from other punishments in kind rather than degree."); *Miller*, 567 U.S. at 471 ("[C]hildren are constitutionally different from adults for purposes of sentencing."). Here, the challenged sentencing scheme does not involve a death sentence or juvenile offenders. As such, the Supreme Court precedent applying a categorical analysis is inapposite.

There is also a second basis for rejecting Lee's Eighth Amendment claim, one rooted in the plain text of the amendment itself. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel **and** unusual punishments inflicted." U.S. CONST. AMEND. VIII (emphasis added). The conjunction "and"

between "cruel" and "unusual" connotes these are distinct, complementary standards, both of which must be met to fall within the constitutional prohibition; cruelty or unusualness alone does not violate the clause. *See Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history."); *Gibson v. Collier*, 920 F.3d 212, 226 (5th Cir. 2019) ("As the text makes clear, these are separate elements."). A punishment is "cruel" under the Eighth Amendment if it is "calculated to 'superad[d]' 'terror, pain, or disgrace.'" *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 542 (2024), *quoting Bucklew v. Precythe*, 587 U.S. 119, 130 (2019). It is "unusual" if it has "'long fallen out of use.'" *Id.*, *quoting Bucklew*, 587 U.S. at 130.

Assuming a mandatory sentence of life imprisonment without the possibility of parole for felony murder is cruel for purposes of the Eighth Amendment, it is not unusual in a constitutional sense. According to a study published by *amici* The Sentencing Project and Fair and Just Prosecution, twelve jurisdictions mandate life without parole sentences for all adult felony murder convictions: Arizona, Florida, Iowa, Louisiana, Michigan, Mississippi, Nebraska, North Carolina, Pennsylvania, South Dakota, the Federal system, and Wyoming. *See* Nazgol Ghandnoosh, Emma Stammen & Connie Budaci, *Felony Murder: An On Ramp for Extreme Sentencing*, 2, 4, 24 (Published March 2022 and Updated May 2024), https://www.sentencingproject.org/reports/felony-murder-an-on-ramp-for-extreme-sentencing (last accessed Mar. 19, 2026); *see also Amici* Brief of The Sentencing Project *et al.* at 7-8 ("[T]en other States mandate life-without-parole sentences for all people convicted of felony murder.").[1] An additional eleven states mandate a life

_____

[1] The majority notes "only four other states have a similar mandatory life without parole sentence, without exceptions, for **second degree murder**": Iowa, Louisiana, Mississippi, and North Carolina. Majority Opinion at 15 (emphasis added). While these may be the (…continued)

without parole sentence for certain felony murder convictions: Arkansas, California, Connecticut, Delaware, Illinois, Massachusetts, New Jersey, New Mexico, New York, Ohio, and South Carolina. *See id.* at 4, 24. And seventeen more jurisdictions permit life without parole for certain felony murders: the District of Columbia, Georgia, Idaho, Indiana, Maryland, Montana, Nevada, New Hampshire, North Dakota, Oklahoma, Oregon, Rhode Island, Tennessee, Utah, Vermont, Virginia, Washington, and West Virginia. *See id.* Clearly, a sentence of life imprisonment without parole for felony murder remains common in the United States and has not fallen into disuse. Hence, this punishment is not unusual for purposes of the Eighth Amendment. For this reason, too, Lee is due no relief under the federal charter.

Turning to Lee's claim under Article I, Section 13, I agree with the majority this provision affords "greater protections" than the Eighth Amendment in this context. Majority Opinion at 60.[2] I am particularly persuaded in this regard by the distinct language

---

only other states besides Pennsylvania which mandate a life sentence for felony murder and which also happen to classify felony murder as "second-degree murder," the particular nomenclature used is irrelevant. As *amicus* The Office of Attorney General rightly observes, "the constitutional question . . . turns not on the label but on the actual crime and its punishment." *Amicus* Brief of The Office of Attorney General at 8 n.4. Again, as Lee's own *amici* have found in a published study and have also represented to this Court, there are twelve jurisdictions which require mandatory life sentences for all felony murder convictions, not just five.

[2] This Court has previously held Article I, Section 13 is coextensive with the Eighth Amendment. *See Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 832 A.2d 396, 399 (Pa. 2003); *Jackson v. Hendrick*, 503 A.2d 400, 404 n.10 (Pa. 1986); *Commonwealth v. Zettlemoyer*, 454 A.2d 937, 967 (Pa. 1982). However, this determination is context dependent. *See Commonwealth v. Batts*, 66 A.3d 286, 298 n.5 (Pa. 2013) ("We recognize that this Court has previously held Article I, Section 13 to be coextensive with the Eighth Amendment in several contexts. . . . However, none of those cases involved juvenile offenders, who the Supreme Court has indicated are to be treated differently with respect to criminal punishment."); *Commonwealth v. Means*, 773 A.2d 143, 151 (Pa. 2001) (opinion announcing judgment (…continued)

of the provision. Our state counterpart to the Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." PA. CONST. ART I, §13. Thus, Article I, Section 13 prohibits all "cruel punishments," full stop. The Eighth Amendment, however, requires punishments to be both "cruel and unusual" to violate the constitutional prohibition. A punishment which is cruel but not unusual (or vice versa) does not offend the Eighth Amendment. Our own charter, by contrast, omits the "and unusual" part. By its plain terms, Article I, Section 13 sweeps more broadly than the Eighth Amendment. The universe of punishments which are cruel is necessarily greater than those which are both cruel and unusual. *See State v. Kelliher*, 873 S.E.2d 366, 382 (N.C. 2022) (state constitutional clause barring cruel or unusual punishments "offers protections distinct from, and in this context broader than, those provided under the Eighth Amendment"); *State v. Bassett*, 428 P.3d 343, 349 (Wash. 2018) (state constitutional ban on cruel punishments "may offer greater protection than the Eighth Amendment because it prohibits conduct that is merely cruel; it does not require that the conduct be both cruel and unusual"); *State v. Moeller*, 548 N.W.2d 465, 487 (S.D. 1996) (state constitutional prohibition of cruel punishments "may be interpreted

---

of court) (concluding in context of constitutional challenge to admission of victim impact testimony at penalty phase of capital trial that "*Zettlemoyer* is distinguishable" and analyzing whether Article I, Section 13 afforded greater protection than Eighth Amendment); *Commonwealth v. Baker*, 78 A.3d 1044, 1055 (Pa. 2015) (Castille, C.J., concurring) ("The *Batts* Court recognized that this Court's prior holdings that Article I, Section 13 was coextensive with the Eighth Amendment arose only in discrete contexts."); *see also* Bruce Ledewitz, *Bails, Fines and Punishments in The Pennsylvania Constitution: A Treatise on Rights and Liberties*, §16.2[a], 595 (Ken Gormley, *et al.* eds., 2d ed. 2020) ("The court tends to look on a case-by-case basis whether the state constitution follows federal law in each particular instance."). This Court has never held Article I, Section 13 is coextensive with the Eighth Amendment in the present context of evaluating the constitutionality of a mandatory life sentence for second-degree murder. There is no precedential bar to finding greater protection under our state charter in this discrete circumstance.

to provide an individual with greater protection than the federal constitution"); *People v. Bullock*, 485 N.W.2d 866, 872 & n.11 (Mich. 1992) ("[T]he Michigan provision prohibits 'cruel or unusual' punishments, while the Eighth Amendment bars only punishments that are both 'cruel and unusual.' . . . The set of punishments which are either 'cruel' or 'unusual' would seem necessarily broader than the set of punishments which are both 'cruel' and 'unusual.'") (emphasis omitted).

I also share the majority's view that the mandatory sentencing scheme for felony murder violates the greater protections afforded under Article I, Section 13. Unlike a defendant convicted of first-degree murder, a defendant convicted of second-degree murder has never been found by a judge or jury to have harbored the specific intent to kill. *See Commonwealth v. Fostar*, 317 A.2d 188, 192 (Pa. 1974) ("[A] finding of a specific intent to kill distinguishes first[-]degree from second[-]degree murder."). A second-degree murderer thus lacks the grave moral culpability of a first-degree murderer. Indeed, a defendant may be convicted of second-degree murder without any involvement whatsoever in the actual killing. He or she does not even have to expect or foresee that a life may be taken. What suffices to support a conviction is simply the defendant's participation, either as a principal or an accomplice, in the perpetration of an enumerated felony during which a criminal homicide was committed. *See* 18 Pa.C.S. §2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."); 18 Pa.C.S. §2502(d) (defining "perpetration of a felony" as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.").

To be sure, the underlying felonies justifying a second-degree murder conviction are serious crimes deserving of serious punishment. However, as the Supreme Court has noted, "[t]here is a line between homicide and other serious violent offenses against the individual[:]"

> Serious nonhomicide crimes may be devastating in their harm but in terms of moral depravity and of the injury to the person and to the public, they cannot be compared to murder in their severity and irrevocability. This is because life is over for the victim of the murderer, but for the victim of even a very serious nonhomicide crime, life is not over and normally is not beyond repair. Although an offense like robbery or rape is a serious crime deserving serious punishment, those crimes differ from homicide crimes in a moral sense.

*Graham v. Florida*, 560 U.S. 48, 69 (2010) (cleaned up).

Notwithstanding that second-degree murderers lack the severe blameworthiness of first-degree murderers and can be, and often are, non-slayers, under Pennsylvania's existing sentencing framework they are all uniformly subject to a mandatory term of life in prison with no possibility of parole. Without any individualized assessment of their specific conduct, their specific characteristics, or the particular circumstances of their crimes, all those convicted of second-degree murder are uniformly and perfunctorily sentenced to prison for the remainder of their natural lives. With the exception of the death penalty, a life sentence without parole is the most severe penalty known to our law. And like a death sentence, a life without parole sentence has characteristics that "are shared by no other sentences." *Id.* Life without parole "alters the offender's life by a forfeiture that is irrevocable[,]" and "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by" commutation, which is rare. *Id.* at 69-70.[3] This sentence means the "denial of hope[,] . . . that good behavior and character

---

[3] Since 1995, there have been 76 commutations of life sentences in Pennsylvania. *See* https://www.pa.gov/agencies/bop/about-the-board/about-statistics/commutation-of-life-sentences (last visited Mar. 19, 2026).

improvement are immaterial[, and] that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Id.* at 70 (quotation marks and citation omitted). The gross mismatch between culpability and the severity of the sentence persuades me this specific case presents an instance, likely to be quite rare, in which the penal sanction is so unduly harsh and devoid of humanity as to constitute an unconstitutionally cruel punishment under the state charter.

Our departure from federal law in this case represents a significant development in Pennsylvania law which will inevitably engender state constitutional claims of cruel punishment in other contexts. In anticipation of these cases on the horizon, I offer some observations regarding the meaning and reach of today's decision.

The majority opinion is confined to "the unique constitutional challenge before us" of "whether the mandatory imposition of a sentence of life without parole for all offenders convicted of second[-]degree murder is consistent with the protections found in Section 13." Majority Opinion at 61; *see id.* at 70 n.18 ("We emphasize the limited nature of our decision today, which addresses only the constitutionality of a sentence of mandatory imprisonment without the possibility of parole for all individuals convicted of second[-] degree murder."). It does not purport to address the constitutionality of any other sentence or sentencing scheme and should not be construed to dictate a finding of unconstitutionality in any other circumstance. In particular, "our decision should not be read as casting doubt upon the constitutionality of existing sentences for first[-]degree murder, whether punished by life imprisonment or death, which involves a complex legal scheme that takes full account of a defendant's individual culpability and circumstances." *Id.*

The majority opinion observes as a historical matter that "Section 13 is founded to a large degree upon Enlightenment theories of deterrence and reformation[.]" Majority

Opinion at 50.  The majority duly recognizes, however, in accordance with well-settled Pennsylvania law, that "the traditional penological justifications for criminal punishment" include not only deterrence and rehabilitation, but also "retribution . . . and incapacitation." *Id.* at 66; *see Commonwealth v. Coleman*, 285 A.3d 599, 613 (Pa. 2022) ("[S]entencing serves many purposes, including protection of society, general deterrence (example to others), individual deterrence, rehabilitation, and retribution (punishment, vengeance, desserts).") (quotation marks and citation omitted); *Commonwealth v. Torsilieri*, 232 A.3d 567, 593 (Pa. 2020) ("[T]he traditional aims of punishment . . . includ[e] deterrence and retribution[.]"); *Commonwealth v. Williams*, 652 A.2d 283, 285 n.1 (Pa. 1994) ("There are other purposes of sentencing in addition to individual deterrence and rehabilitation. . . . The 'recidivist philosophy' urged by appellant is particularly relevant to the concepts of individual deterrence and rehabilitation. The 'recidivist philosophy,' however, is totally meaningless insofar as other valid purposes of sentencing are concerned, such as protection of society and general deterrence.  The legislature is perfectly free to enact a sentencing scheme which rejects the 'recidivist philosophy' and focuses on other goals of the penal system."); 42 Pa.C.S. §9721(b) ("[T]he court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."); 204 Pa. Code §303a.5(b)(2) (Pennsylvania's Sentencing Guidelines "provide a system with a primary focus on retribution, but one which allows for the fulfillment of other utilitarian sentencing purposes, including person rehabilitation, general deterrence, incapacitation to protect the public, and victim restoration.").[4]  Thus, today's decision reaffirms that

---

[4] Under the rehabilitation theory of punishment, "we 'punish' the convicted criminal by giving him appropriate treatment, in order to rehabilitate him and return him to society so reformed that he will not desire or need to commit further crimes." Wayne R. LaFave, 1 (…continued)

retribution and incapacitation are properly weighed in the sentencing calculus. A court's consideration of these long-accepted penological aims in fashioning a sentence does not render the punishment cruel under Article I, Section 13.

The majority opinion does not "[d]efin[e] with exactness" the meaning of "cruel" under Article I, Section 13. Majority Opinion at 61. Nonetheless, certain conclusions are clear regarding what "cruel" does **not** mean. "Cruel" does not mean causing pain or suffering. The maxim of *noscitur a sociis* "requires that the meaning of a word be interpreted in the context of its surrounding words[.]" *Mezzacappa v. Northampton County*, 334 A.3d 268, 275 (Pa. 2025). "Cruel" immediately precedes and modifies the word "punishments." "All punishment involves the infliction of physical or psychological pain." John F. Stinneford, *The Original Meaning of "Cruel"*, 105 Geo. L.J. 441, 459 (2017). Hence, the word "cruel" in Article I, Section 13 cannot simply mean causing pain or suffering. If it did, the "cruel punishments" clause would outlaw all punishments without exception. This would be an absurd result, and constitutional language, like statutory language, must be construed to avoid absurdity. *See* 1 Pa.C.S. §1922(1). Instead, "cruel" must mean causing an extraordinary amount of pain beyond the normal suffering which attends all punishment.

---

Subst. Crim. L. §1.5(a)(3) (3d ed.). "[T]he concept of deterrence involves the notion of 'individual deterrence' — that punishment will dissuade the offender from repeating his criminal acts [and] the principle of 'general deterrence' — that punishment can discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow from certain crimes." *State in Interest of C.A.H.*, 446 A.2d 93, 97 (N.J. 1982) (cleaned up). "The goal of retribution . . . reflects society's and the victim's interests in seeing that the offender is repaid for the hurt he caused[.]" *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Incapacitation reflects the principle that "society may protect itself from persons deemed dangerous because of their past criminal conduct . . . by isolating these persons from society." LaFave, 1 Subst. Crim. L. §1.5(a)(2).

Moreover, the prohibition on cruel punishments does not bar lengthy or severe sentences. A sentence can be long or severe, even spanning the entirety of the defendant's remaining life, but nevertheless proportionate to the gravity of the wrongdoing and the circumstances of the defendant and case, such that it does not cross the line into unconstitutional cruelty.

Also, "cruel" is not synonymous with "excessive," *i.e.*, exceeding what is necessary to serve the permissible goals of sentencing. *See* Concurring Opinion at 12 (Wecht, J.) ("Nor is [today's decision] an invitation to appellate jurists to invalidate any sentence that might strike them as beyond what is strictly 'necessary' to serve some legitimate interest."). Article I, Section 13 is a single sentence consisting of three clauses. The first two clauses bar "excessive bail" and "excessive fines." They explicitly employ the adjective "excessive." The "cruel punishments" clause, however, does not. The choice of the distinct word "cruel" to describe the prohibition signals that mere excessiveness is insufficient to render a punishment unconstitutional. *See Shirley v. Pennsylvania Legislative Reference Bureau*, 318 A.3d 832, 849 (Pa. 2024) (noting "the basic rule of construction that when a [text] uses different words, it is presumed the words have different meanings"). It would appear that a sentence is unconstitutionally cruel only when it goes beyond mere excessiveness and involves undue harshness to the point of inhumanity.

With these points of elaboration, I join the majority's cogent and important decision.

Justice McCaffery joins this concurring opinion.