PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 02-5004

EL SAYED HASSAN RASHWAN,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(CR-02-134)

Argued: April 4, 2003

Decided: May 8, 2003

Before WIDENER, WILKINSON, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Widener and Judge Motz joined.

## COUNSEL

**ARGUED:** Robert James Wagner, Assistant Federal Public Defender, Richmond, Virginia, for Appellant. S. David Schiller, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Federal Public Defender, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, David T. Maguire, Assistant United States Attorney, Richmond, Virginia, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

El Sayed Hassan Rashwan was convicted of marriage fraud, conspiracy to commit marriage fraud, identification fraud, and making false statements to the Immigration and Naturalization Service (INS). Rashwan, along with several other individuals, engaged in a scheme to procure citizenship and other benefits through the production of false documents and the undertaking of a sham marriage. Rashwan was properly prosecuted and convicted on all counts. The judgment of the district court is thus affirmed.

I.

Rashwan, an Egyptian national, entered the United States in July 1999 on a six month visitor's visa. At the end of the six months, Rashwan failed to leave the country. He continued to reside in the United States illegally, and in the ensuing years undertook a number of schemes in an attempt to gain permanent residence status.

In September 2000, Rashwan traveled from his residence in New Jersey to Virginia to obtain a driver's license. Rashwan had been unable to obtain a driver's license in New Jersey because he had neither a social security card nor a green card. When Rashwan learned he would be unable to procure a New Jersey license, he contacted a man who brought individuals to Virginia to get licenses. The two men drove to a Richmond area office of the Department of Motor Vehicles (DMV). There, Rashwan applied for a Virginia identification card and learner's permit.

In order to receive a license in Virginia, Rashwan was required to complete a DL51 residency certification form, which requires the applicant to provide a sworn statement of his name and the place and length of his Virginia residence. Rashwan provided a false Richmond address. The DMV then issued a Virginia identification card with Rashwan's picture on it and, the following day, a Virginia learner's permit. On October 18, 2000, Rashwan returned to the same Virginia DMV office and applied for a Virginia's driver's license. He again falsely stated and swore to a Richmond residence address.

After receiving his license, Rashwan informed his acquaintance Nadir Hajez that he would like to get married so that he could obtain his green card. Rashwan asked Hajez to seek out women who might be interested in marrying him in exchange for free rent. In October 2000, Hajez introduced Rashwan to Melanie Walker. Walker was about to be evicted and was having trouble keeping a job. Rashwan offered Walker an apartment for her sole use and $2,500 to assist her in getting a car. In exchange, Rashwan asked Walker to marry him so he could secure permanent residency status. Under grant of immunity, Walker testified that she knew that she and Rashwan were entering into the marriage with no intent to consummate it and with the sole purpose of facilitating Rashwan's obtaining a green card.

On December 6, 2000, Walker and Rashwan were married in a double wedding ceremony with another couple, Omar Obeidat and Peggy Campbell. Obeidat was also a foreign national seeking to obtain permanent residency in the United States. There were no family members in attendance at the wedding. Rashwan arranged for photographs to be taken during the wedding, and later admitted that the sole purpose of these pictures was to impress the INS. The bride and groom did not consummate the marriage and did not live together after they were married.

In late December 2000, Walker moved out of the free apartment Rashwan had been providing and asked for a divorce so that she could marry Omar Obeidat. In response, Rashwan threatened Walker that if she did not finish the INS application process with him, he would report Walker and Obeidat to the authorities and they would go to jail. Walker agreed to continue with the sham marriage.

On April 30, 2001, Rashwan hired an immigration attorney to help him prepare an application for permanent residency. Based on information provided by Rashwan and Walker, the attorney prepared for the INS an I-485 form, Application to Register Permanent Resident or Adjust Status, and a biographical information form. At no point in time did Rashwan inform the INS or his attorney that he and Walker were not co-habitating.

Rashwan met with Walker several times to exchange personal information in preparation for their INS interview. In order to make

their marriage appear authentic, he obtained credit cards and an electric bill for his residence in Walker's name. He gave these credit cards to Walker only on the day of the interview so that she could produce them if necessary, and he took them back from her immediately after the interview. Rashwan also hung pictures of himself and Walker in the apartment he shared with Barbara Hancock to make it appear that Walker lived with him.

In February 2002, Rashwan and Walker were interviewed by an INS district adjudications officer to validate that a bona fide marriage existed between the two. The examiner specifically asked whether Rashwan and Walker were residing together, to which both falsely responded yes. After the interview, Rashwan provided Walker with more money and a plane ticket to visit her mother. He also asked her to maintain the marriage until Rashwan went back to the INS for a second interview. On February 14, 2002, the INS approved Rashwan's application and granted him a conditional residency permit.

Later that month, the Virginia DMV discovered that the false address used by Rashwan in his license application had also been used by at least 55 other applicants. During the ensuing investigation, DMV agents interviewed Rashwan in his home. At this time, Rashwan admitted that he never lived at the address listed on his application. The agent then confiscated Rashwan's driver's license. Rashwan's girlfriend Barbara Hancock called the DMV several times over the next few weeks pretending to be his wife and demanding to know when Rashwan's license would be returned to him.

In early March 2002, the DMV contacted the FBI concerning Rashwan's identification fraud, which in turn led to an FBI investigation of Rashwan. On June 5, 2002, a grand jury returned an eight-count superceding indictment charging Rashwan and Hancock with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and obstruction of justice.[1] The indictment also alleged that Rashwan committed identification document fraud in violation of 18 U.S.C. § 1028(a), marriage fraud in violation of 8 U.S.C. § 1325(c), and immigration fraud in violation of 18 U.S.C. § 1546(a).

---

[1]The obstruction of justice charge was dismissed with prejudice by the district court.

On September 18, 2002, a jury found Rashwan guilty of the above counts. At sentencing, the district court applied a two level enhancement for organizing and leading the criminal activity, giving Rashwan a total offense level of ten. Rashwan was sentenced to twelve months incarceration on each count, to run concurrently, and three years supervised release. Rashwan now appeals his conviction and sentence on several grounds.

II.

Rashwan first contends that it was improper for the government to prosecute him for both conspiracy to commit marriage fraud under 18 U.S.C. § 371 and the substantive offense of marriage fraud under 8 U.S.C. § 1325(c) because such prosecution violates the judicially devised doctrine called Wharton's Rule.[2] Under Wharton's Rule, "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli v. United States*, 420 U.S. 770, 774 n.5 (1975) (quoting 1 R. Anderson, Wharton's Criminal Law and Procedure § 89 p. 191 (1957)). Rashwan argues that his conviction for both of these offenses violated Wharton's Rule because marriage fraud necessarily requires the participation of two persons for its commission.

Wharton's Rule, however, does not apply where, as here, a crime is capable of being committed by one person. *See United States v. Spitler*, 800 F.2d 1267, 1276-77 n.5 (4th Cir. 1986). The language of 8 U.S.C. § 1325(c) makes plain that it is intended to punish "[a]ny

---

[2]Rashwan also argues that some of the conspiracy charges arising from this conduct should have been dismissed because the government could not properly proceed simultaneously on both the general defraud provision of 18 U.S.C. § 371 and the specific offense provision of § 371 in the same conspiracy count. However, this Court has specifically held that the "two prongs of § 371 are not mutually exclusive." *United States v. Arch Trading Co.*, 987 F.2d 1087, 1091 (4th Cir. 1993). "[G]iven conduct may be proscribed by both of the section's clauses. In such a situation, the fact that a particular course of conduct is chargeable under one clause does not render it immune from prosecution under the other." *Id.* at 1092. Therefore, Rashwan's claim is without merit.

*individual* who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(c) (West Ann. 2003) (emphasis added). Thus, it is the fraud committed by Rashwan as an individual that violates the statute and it is irrelevant whether Walker entered into the marriage with a similar intent to defraud the INS or whether she entered the marriage with entirely innocent motives. Although in this case Walker was part of the scheme to defraud the INS, Rashwan could just as easily have wed an individual who had no knowledge of his plan to evade the immigration laws. Therefore, it is clear that Wharton's Rule does not apply in this situation and that Rashwan may be charged separately for the substantive crime of marriage fraud as well as with conspiracy to defraud under 18 U.S.C. § 371.

Moreover, courts have specifically exempted from Wharton's Rule conspiracies that involve more people than are required for commission of the substantive offense. *Spitler*, 800 F.2d at 1277 n.5. This "third party exception" recognizes that the presence of a third party in a conspiracy enhances the dangers presented by the crime. And Wharton's Rule is aimed at crimes where the "parties to the agreement are the only persons who participate in [the] commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Iannelli*, 420 U.S. at 782-3.

In this case, multiple parties were involved in the scheme. Rashwan conspired with Walker, Hancock, and Hajez to defraud the United States government and obtain immigration benefits to which he was not entitled. Hajez conspired with Rashwan to procure a sham marriage by seeking out a woman who would be willing to wed Rashwan for monetary payment. Walker agreed to enter into a marriage with Rashwan to fool the INS and, together with Rashwan, made false statements to the INS. Hancock pretended to be Rashwan's wife on several occasions in furtherance of the conspiracy and also threatened Walker when Walker did not want to continue with the scheme. Rashwan's friends pressured Walker to go to the INS with him when Walker wished to abandon the plan. And the consequences of these actions fell not on the actors themselves, but instead on the government that they were attempting to defraud. This marriage fraud

scheme is thus dissimilar to classic Wharton's Rule crimes and the Rule cannot bar a conspiracy conviction.

### III.

Rashwan next argues that the government improperly prosecuted him for identification fraud under 18 U.S.C. § 1028(a)(1) which punishes any individual who "knowingly and without lawful authority produces an identification document or a false identification document." Rashwan contends that he merely obtained a false identification card, learner's permit, and driver's license, but that he did not produce them within the meaning of the statute. Rashwan, however, cannot insulate himself from punishment by manipulating innocent third parties to perform acts on his behalf that would be illegal if he performed them himself.

Whether or not Rashwan physically produced the false documents himself is irrelevant to his conviction. Title 18 U.S.C. § 2(b) makes clear that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b). Rashwan aided and abetted the production of false identification documents by providing false information to the DMV with the specific intent that the agency would then produce a false identification document for him. Because Rashwan specifically intended for the DMV to issue a fraudulent identification card and license, it does not matter whether the clerk who actually produced the license also had any intent to commit the crime. *See United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979) (conviction proper even when defendant acts through innocent agents who do not themselves intend to break the law).

It is clear, moreover, that conviction on an aiding and abetting theory is proper, even if the government did not specifically charge Rashwan under 18 U.S.C. § 2. "[A] defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor." *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996) (citation omitted). Aiding and abetting "is not an independent crime under 18 U.S.C. § 2." *Id.* Section 2 merely obviates the need for awkward

phrasing and strained readings of statutes by making clear that in all crimes an accessory will be punished as a principal. Thus, aiding and abetting "is implicit in all indictments." *United States v. Dodd*, 43 F.3d 759, 762 n.5 (1st Cir. 1995).

And as *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981), indicates, the precise language used in the indictment, by the prosecution, or in the jury instructions is unimportant. So long as all of the elements necessary to find Rashwan guilty of the crime, whether as a principal or as aider or abetter, were put before the jury, conviction will be proper. Rashwan's conviction for producing false documents under § 1028(a) is clearly supported by the evidence before the jury and will therefore be upheld.

IV.

Lastly, Rashwan argues that the district court erred in enhancing his offense level two points under USSG § 3B1.1(c) because there is no proof that he exercised any control over Walker. The U.S. Sentencing Guideline Manual § 3B1.1(c) states that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity," his offense level should be increased by two levels. There is ample evidence in the record indicating that Rashwan exerted control not only over Walker, but also over other parties to the conspiracy. The district court thus did not err in finding that he had a leadership role in these criminal activities.

In determining whether a sentencing enhancement is appropriate under USSG § 3B1.1, a district court should consider whether the defendant exercised decision making authority for the venture, whether he recruited others to participate in the crime, whether he took part in planning or organizing the offense, and the degree of control and authority that he exercised over others. *See* USSG § 3B1.1, app. 4 (2002). Leadership over only one other participant is sufficient as long as there is some control exercised. *United States v. Harriott*, 976 F.2d 198, 200 (4th Cir. 1992). In this case, Rashwan exercised direction and control over the entire scheme and was responsible for persuading Walker and others to take part in his crimes.

Rashwan clearly recruited several individuals to help with his scheme. It was Rashwan who approached Hajez about finding a

woman to marry. Rashwan also convinced Barbara Hancock to take part in the scheme by hanging pictures around Hancock's apartment to make it appear as if Walker and Rashwan lived there together. And although Rashwan claims that he and Walker were "equally culpable" for the marriage fraud, it is apparent from the record that Rashwan had all of the decision making power in the relationship.

Indeed, Rashwan exercised extensive control over Walker throughout the conspiracy. It was Rashwan who initially proposed the idea of paying Walker to marry him so that he could obtain his green card. Rashwan organized the wedding ceremony and hired a photographer to document the marriage. Rashwan was involved in planning every detail of the wedding, down to buying clothes for the bride to wear for the ceremony. When Walker wanted to back out of the scheme shortly after the wedding, Rashwan threatened to turn her in to the police if she did not continue to cooperate. He also cajoled her into remaining in the marriage by promising her more money and a plane ticket to visit her mother.

Additionally, Rashwan guided the entire green card application process. He arranged meetings with Walker to exchange information and Rashwan applied for joint credit cards and joint accounts in his and Walker's names. Rashwan drove Walker to Richmond where both individuals lied to the INS. In fact, even Rashwan's own counsel admitted that Rashwan "was the one who knew what to do or had the information of how to go through the immigration process," that he was "sort of guiding" and "suggesting to the other[s] as to what to do." Rashwan was clearly the leader and organizer of this scheme to defraud the federal government, and the district court did not err in imposing a two point sentencing enhancement on him for this leadership role.

## V.

Rashwan's challenges to his conviction and sentence are without merit. For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.