**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4007**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

PEDRO OSCAR DIEGUEZ, a/k/a The Cuban,

                    Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, Chief District Judge.  (3:13-cr-00020-FDW-DSC-1)

Submitted:  December 18, 2015          Decided:  December 23, 2015

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Peter C. Anderson, BEVERIDGE & DIAMOND, PC, Charlotte, North Carolina, for Appellant. Jill Westmoreland Rose, United States Attorney, Anthony J. Enright, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pedro Oscar Dieguez was convicted after a jury trial of conspiracy to distribute and to possess with intent to distribute at least five kilograms of cocaine and conspiracy to launder funds. He was sentenced to 400 months in prison. He appeals his convictions and sentence on numerous grounds. We affirm.

I.

Dieguez first contends that the jury was confused by the unrelated and unreliable testimony regarding the various drug transactions involved in his drug conspiracy. Dieguez asserts that the Government failed to paint a picture regarding the scope of the conspiracy or the interplay of the coconspirators. However, in evaluating the sufficiency of the evidence, we do not review the credibility of the witnesses, and we assume that the fact finder resolved all contradictions in the testimony in favor of the Government. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002). Moreover, it is not necessary to prove the identifiable organizational structure of a conspiracy. In fact, contemporary drug conspiracies are often "only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United

States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Accordingly, Dieguez's claim is without merit.

## II.

Dieguez next contends that the district court erred in failing to sua sponte instruct the jury regarding single versus multiple conspiracies. Dieguez asserts that the Government built their proof of conspiracy upon a flawed assumption that all of the cocaine that was ever dealt by the cooperating witnesses was automatically part of one large single conspiracy.

"In a conspiracy prosecution, a defendant may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). Because Dieguez failed to raise the issue of variance before the trial court, however, and the jury was not instructed that they could find separate conspiracies, review is limited to determining whether the trial court committed plain error in failing to sua sponte instruct the jury that they could find multiple conspiracies rather than the single one charged in the indictment. See United States v. Young, 470 U.S. 1, 15 (1985). "A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in 'separate conspiracies *unrelated* to the overall

3

conspiracy charged in the indictment.'" Kennedy, 32 F.3d at 884 (quoting United States v. Castaneda-Cantu, 20 F.3d 1325, 1333 (5th Cir. 1994)).

A review of the evidence presented by the parties reveals that the proof at trial did not demonstrate separate conspiracies. Therefore, there was no variance, let alone plain error, in failing to instruct on single versus multiple conspiracies. The evidence presents a picture of one conspiracy in which Maximiliano Aguilar-Rodriguez and Juan Diego Aguilar-Preciado assisted Dieguez in obtaining large quantities of cocaine from Mexico and distributing it to others for even further distribution to users. Although Dieguez did not participate in all the transactions, there is no requirement that every member must participate in every transaction to find a single conspiracy. See United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). The only testimony Dieguez refers to as supporting his contention is Aguilar-Preciado's testimony that Dieguez wanted to work only with him and his uncle because other drug dealers had not paid him. However, the fact that Dieguez wanted to work with limited people in his inner circle did not negate the fact that his suppliers and customers all worked together over an extended period of time to sustain the needs of the drug-buying public. Therefore, the district court's failure

4

to give a multiple conspiracy instruction was not plainly erroneous.

## III.

Dieguez next contends that the district court improperly permitted the Government to question Aguilar-Preciado and Aguilar-Rodriguez regarding who was involved in the "conspiracy." However, both of these witnesses had pled guilty to conspiracy, and the jury was instructed that the Government still had to prove that Dieguez was involved in the same conspiracy. There was no abuse of discretion in permitting these witnesses to state the charge to which they pled guilty and with whom they conspired.

## IV.

Dieguez next contends that the district court erred in its calculation of the drug quantity attributable to him for sentencing purposes. We review the district court's drug quantity finding underlying its calculation of the base offense level for clear error. United States v. Kellam, 568 F.3d 125, 147 (4th Cir. 2009). This deferential standard of review requires reversal only if this court, upon review of the record as a whole, "is left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (internal quotation marks omitted).

5

Dieguez argues first that the Government's witnesses at trial, whose testimony formed the basis for the attributable drug amount, lacked the necessary reliability based upon their biases, the inconsistencies in their testimony, their vague estimates, the alleged fact that some of the drug transactions were not related to the conspiracy at issue, and the lack of corroboration. However, the district court was entitled to credit the testimony of Dieguez's coconspirators, even if the testimony was inconsistent or otherwise questionable. See United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997) (explaining that the uncorroborated testimony of a single cooperating witness may be sufficient to uphold a conviction); see also United States v. Sainz-Preciado, 566 F.3d 708, 713-14 (7th Cir. 2009) (holding that district court can credit testimony that is uncorroborated and comes from an admitted liar or paid Government informant). Moreover, Dieguez was directly tied to well over 150 kilograms of cocaine by specific testimony, and Dieguez does not provide any specific evidence that the witnesses' estimates or recollections were incorrect other than to contend that the witnesses were unreliable. See United States v. Randall, 171 F.3d 195, 210-11 (4th Cir. 1999) (explaining that a defendant bears the burden of establishing that information the district court relied on in calculating the relevant drug quantity is incorrect); see also United States v.

Lamarr, 75 F.3d 964, 972-73 (4th Cir. 1996) (concluding that approximation of drug quantity for sentencing not clearly erroneous if supported by competent record evidence, which can include the contradictory testimony of a coconspirator).

Dieguez further avers that the estimates in the presentence report ("PSR") do not "make sense" given that Dieguez apparently owed money to his suppliers and did not live beyond his means. Given that the amounts at issue, Dieguez asserts that he would have netted "millions and millions of dollars," and thus, Dieguez contends that the allegations of drug quantity are inconsistent with the facts. We find that Dieguez's argument is without merit. First, while Dieguez apparently dealt with large amounts of drugs and money, only a portion of that money would be profit, and a lesser portion would be profit to him. Second, the Government presented evidence of nearly $200,000 in unexplained cash deposits into one of Dieguez's accounts over a four year period. Third, the Government presented evidence that Dieguez spent a substantial amount of money on ongoing construction projects on his property. Accordingly, there was no error in calculating the drug quantity.

V.

Dieguez next asserts that the district court erred in enhancing his offense level under U.S. Sentencing Guidelines Manual § 3B1.1(a) (2013). Under section 3B1.1(a) of the

Guidelines, a defendant qualifies for a four-level enhancement to his offense level if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). The district court's determination that a defendant was an organizer or leader is a factual matter reviewed for clear error. United States v. Thorson, 633 F.3d 312, 317 (4th Cir. 2011).

Factors distinguishing a leadership or organizational role from lesser roles include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, cmt. n.4. The commentary to the Guideline also states that there can "be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." Id. "Leadership over only one other participant is sufficient as long as there is some control exercised." United States v. Rashwan, 328 F.3d 160, 166 (4th Cir. 2003).

Dieguez contends that there was no testimony that he satisfied any of the factors outlined in the Guidelines commentary. He also avers that the district court failed to provide a sufficient analysis. However, the trial testimony showed that Dieguez had couriers, an accountant and an assistant

8

working with him in his drug business.  In addition, Dieguez arranged for the transportation and sale of large quantities of cocaine.  Further, as the district court explicitly noted, many meetings and transactions took place at Dieguez's home.  Finally, Dieguez's counsel admitted at sentencing that the trial testimony alone was sufficient to support a three-level enhancement under USSG § 3B1.1(b) and, aside from denying his involvement altogether, provided no evidence undermining the factual allegations in the PSR.  Accordingly, we conclude that the district court did not clearly err.  See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) (stating that "defendant has an affirmative duty to make a showing that the information in the [PSR] is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate").

## VI.

Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the drug offense.  USSG § 2D1.1(b)(1).  The commentary to § 2D1.1 explains that the weapons enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, cmt. n.11(A).  The district court's decision to apply the enhancement is reviewed

9

for clear error.  United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997).

"[E]nhancement under Section 2D1.1(b)(1) does not require proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun."  Id. (alteration and internal quotation marks omitted).  Instead, "possession of the weapon during the commission of the offense is all that is needed to invoke the enhancement."  United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992); accord United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001) ("In order to prove that a weapon was present, the Government need show only that the weapon was possessed during the relevant illegal drug activity."). "[P]roof of constructive possession of the [firearm] is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden."  United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010).

Dieguez admitted to possession of a .22 pistol found in a bedroom in Dieguez's house.  Further, the PSR stated that Dieguez made several inquiries regarding purchasing firearms due to his outstanding drug debt and that he told Aguilar-Rodriguez that he had, in fact, obtained a firearm.  In addition, a .45 handgun was found in a table near the entryway of Dieguez's house.  Further, Dieguez was seen shooting a rifle and a handgun

10

on his property.  We find this evidence was sufficient to show Dieguez's possession of both firearms by a preponderance of the evidence.  See United States v. Lawing, 703 F.3d 229, 240 (4th Cir. 2012) (explaining that constructive possession requires showing of "ownership, dominion, or control over the contraband itself or the premises . . . in which the contraband is concealed" (internal quotation marks omitted)).

Once the Government establishes a defendant's possession of a firearm, the weapons enhancement is proper unless a connection between that possession and the narcotics offense is "clearly improbable."  The defendant bears the burden of showing such a clear improbability.  Manigan, 592 F.3d at 630-32 & n.8.

Dieguez contends that the firearm found in the bedroom was a collector's item and that neither the gun found in the bedroom nor the handgun found in a table by the entrance of the home was loaded.  He also notes that no drugs were found in the home.  However, the test requires nothing more than that the guns be located in the same place where drugs are stored or distributed.  Harris, 128 F.3d at 852-53.  The record is replete with evidence regarding drug transactions in Dieguez's home.  Moreover, the presence of the firearms, whether or not they were loaded, could act as a deterrent to potential drug thieves and serve as a security measure.  Id. (noting that unloaded weapons still increase the risk of violence).  Dieguez did not claim that he

11

or anyone in his family used the guns for hunting or sport. Because Dieguez had only a weak case to support his "clearly improbable" theory and he possessed two firearms in his home which was the site of numerous drug transactions, the district court did not clearly err in applying the enhancement. See Manigan, 592 F.3d at 630 (noting that "a sentencing court might reasonably infer, in the proper circumstances, that a handgun seized from the residence of a drug trafficker was possessed in connection with his drug activities").

## VII.

Dieguez next contends that his sentence was procedurally unreasonable because the district court failed to consider the sentencing disparities between his sentence and those of his alleged coconspirators, who received sentences between 46 and 156 months. However, although district courts are to consider disparities in sentencing when imposing a sentence, see 18 U.S.C. § 3553(a)(6) (2012), we have expressed doubt whether "a defendant may . . . challenge a sentence on the ground that a co-conspirator was sentenced differently." United States v. Goff, 907 F.2d 1441, 1446-47 (4th Cir. 1990) (collecting cases), superseded on other grounds by USSG app. C amend. 508; see also United States v. Sierra-Villegas, 774 F.3d 1093, 1103 (6th Cir. 2014) ("[T]he district court may consider the defendant's sentence in comparison with that of co-defendants at sentencing,

12

but need not do so; it is a matter of discretion."), cert. denied, 136 S. Ct. 34 (2015). Section 3553(a)(6) is aimed primarily at eliminating national sentencing inequity, not differences between the sentences of coconspirators. United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996); see also United States v. Simmons, 501 F.3d 620, 623-24 (6th Cir. 2007) (collecting cases).

Moreover, Dieguez did not specifically raise the issue of sentencing disparity below, although the district court stated, in any event, that it had considered all of the sentencing factors. Further, Dieguez and his coconspirators were not similarly situated. Accordingly, the district court did not err in this regard.

VIII.

Finally, Dieguez asserts that his 400-month sentence is substantively unreasonable given that he was a non-violent, first-time offender, with a strong work ethic and supportive family background. We examine the substantive reasonableness of the sentence under "the totality of the circumstances." Gall v. United States, 552 U.S. 38, 51 (2007). A sentence "within or below a properly calculated Guidelines range is presumptively reasonable [on appeal]." United States v. Louthian, 756 F.3d 295, 306 (4th Cir.), cert. denied, 135 S. Ct. 421 (2014). The defendant bears the burden to rebut this presumption "by showing

13

that the sentence is unreasonable when measured against the . . . § 3553(a) factors." Id. In evaluating the sentence for an abuse of discretion, this court "give[s] due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." Gall, 552 U.S. at 59-60. We "can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court." United States v. Yooho Weon, 722 F.3d 583, 590 (4th Cir. 2013) (internal quotation marks omitted).

Here, the district court expressly acknowledged Dieguez's lack of a criminal record and his work history. And indeed, the court did vary downward in Dieguez's case from the Guidelines range of life in prison, albeit not to the degree that he requested. The court opined that Dieguez was a high-level leader in a very large-scale conspiracy involving enormous quantities of cocaine, not regularly seen by the district court. The court noted the seriousness of the crime, and the necessity to deter both Dieguez's future conduct and the conduct of others. The court balanced these considerations with those that weighed in favor of a shorter sentence, such as Dieguez's personal history and characteristics—namely his clean past record, the fact that his obstruction enhancement might chill the right to take the stand, and the need to encourage his good

14

behavior in prison. The court ultimately found that, while the positive factors justified a below-Guidelines sentence, a substantial sentence nevertheless was warranted. After considering the totality of the circumstances, we conclude that Dieguez has not rebutted the presumption of substantive reasonableness accorded to his below-Guidelines sentence.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED