**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 21-4220**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

     v.

WILLIAM WELLINGTON HOOPER, JR.,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Newport News.  David J. Novak, District Judge.  (4:20-cr-00018-DJN-DEM-1)

Submitted:  February 24, 2022                 Decided:  April 21, 2022

Before GREGORY, Chief Judge, RICHARDSON, Circuit Judge, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Mark Diamond, Richmond, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Lisa R. McKeel, Assistant United States Attorney, Jacqueline R. Bechara, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Wellington Hooper, Jr., was convicted by a jury of conspiracy to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e); production of child pornography, in violation of 18 U.S.C. § 2251(a); and two counts of coercion and enticement to produce child pornography, in violation of 18 U.S.C. § 2422(b). He was sentenced to life in prison. On appeal, Hooper challenges his convictions and sentence on multiple grounds. We affirm.

I.

Hooper first challenges the district court's denial of his motion to suppress evidence derived from two cell phones seized by law enforcement on two different occasions. This court "review[s] the factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo." *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012). "When a suppression motion has been denied, this [c]ourt reviews the evidence in the light most favorable to the government." *Id.*

The first cell phone was seized when Hooper was arrested while dining in a restaurant with his family. Officers found Hooper seated with his phone on the table within inches of his hand. The officers asked Hooper to go outside, and as he stood up, one officer took his phone from the table. Subsequently, law enforcement obtained a search warrant for the contents of the phone. The district court ruled that the seizure fell easily within the search incident to arrest exception to the warrant requirement.

On appeal, Hooper asserts that the police did not seize his phone until Hooper had already been arrested and removed from the table; accordingly, the phone was not subject

2

to destruction or use of a weapon and, thus, could not be seized incident to arrest. However, the district court explicitly rejected Hooper's wife Robin's testimony that the police returned to the table to seize the phone minutes after escorting Hooper away. Instead, the district court determined that the officer's testimony was more credible and found that the officer seized the phone as Hooper stood up from the table. Special deference is given to the district court's credibility determinations at a suppression hearing, *United States v. Bebris,* 4 F.4th 551, 560 (7th Cir. 2021), and here, the finding was also supported by the officer's dashcam video. Accordingly, the seizure of the cell phone was appropriate. *See Riley v. California,* 573 U.S. 373, 388 (2014) (calling concession that a cell phone may be seized incident to arrest "sensible").

Next, Hooper challenges the seizure of his phone from a table on a platform attached to a pier. The pier was on property belonging to Robin's parents and leased by Robin's company, Williams Wharf Oyster Company. The platform was used to work on the oysters. Hooper had no ownership interest in the Company, and he drew no salary. However, he did help his wife with the Company. Hooper's residence was on adjacent property. When law enforcement entered the Company's property, Hooper put his phone down and walked off the pier towards the officers, where he was arrested.

The district court found that Hooper lacked standing to raise a Fourth Amendment challenge because he had no expectation of privacy in the platform and, even if he did, he lost that expectation when he abandoned his phone. On appeal, Hooper contends that his expectation of privacy arose from the fact that he resided on the property. Further, he asserts that he did not abandon his cell phone, but merely left it on his property.

3

"[T]he Fourth Amendment protects both homes and the land immediately surrounding and associated with homes, known as curtilage, from unreasonable government intrusions." *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 192 (4th Cir. 2015) (internal quotation marks omitted). The curtilage—the "area adjacent to the home and to which the activity of home life extends"—"is intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened." *Florida v. Jardines*, 569 U.S. 1, 7 (2013) (internal quotation marks omitted). This court "presume[s] a warrantless search of curtilage to be unreasonable." *Covey*, 777 F.3d at 192 (internal quotation marks omitted).

The extent of curtilage is determined by whether "the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *United States v. Dunn*, 480 U.S. 294, 300 (1987) (internal quotation marks omitted). However, the test used to determine the boundaries of a home's curtilage is not "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions." *Id.* at 301. In determining whether an area qualifies as curtilage, the *Dunn* Court identified four factors: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301. At the same time, though, the Court cautioned that "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's

4

'umbrella' of Fourth Amendment protection." *Id.*; *see also Oliver v. United States*, 466 U.S. 170, 182 n.12 (1984) (describing "the curtilage . . . as the area around the home to which the activity of home life extends").

Applying the *Dunn* factors here, we find that the platform attached to the pier is not part of the curtilage of Hooper's residence. First, the evidence showed that the pier was part of Robin's parents' property, where their house was located. Hooper's residence was on an adjacent property, and the parents' house was in between Hooper's residence and the docks. The pier was two to three acres away from Hooper's home. Notably, in the district court, Hooper did not argue that the pier/platform were part of his home but rather that it was his "workstation" or "office."

Moreover, there was no evidence that Hooper used the platform or pier as an extension of his residence to conduct "intimate activity associated with the sanctity of a man's home." *Dunn*, 480 U.S. at 300. There was no evidence that Hooper took steps to exclude others from entering the dock or enclosed a private office; to the contrary, the evidence showed that other employees accessed and worked on the pier and platform. Thus, because the platform was not within the curtilage of Hooper's home, he had no expectation of privacy in it and, thus, no standing to invoke the Fourth Amendment.

## II.

Hooper next challenges the admission of testimony regarding unadjudicated prior bad acts. In the instant case, the Government submitted material evidence in the form of text messages and emails between Hooper and Jennifer Hutchens and Hooper and Jennifer Hutchens' minor daughter. Hooper denied sending the messages. The district court

permitted the Government to present testimony of prior bad acts, finding that it was admissible to show identity and modus operandi. The court noted that, in the instant case, Hooper claimed that someone else sent the messages at issue, "bringing his identity into issue." (J.A. 249). On appeal, Hooper asserts that his identity was not an issue at trial, in that he argued only that he did not commit the acts of which he was accused, and that the Government did not assert that it sought admission to prove modus operandi. Further, Hooper contends that the district court's limiting instruction was insufficient.

Fed. R. Evid. 404(b) is an inclusive rule, allowing evidence of other crimes or acts except that which tends to prove only criminal propensity. *United States v. Queen*, 132 F.3d 991, 994-95 (4th Cir. 1997). Such evidence of other crimes or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* at 994. Evidence of prior acts is admissible if the evidence is: (1) relevant to an issue other than the general character of the defendant, (2) necessary, (3) reliable, and (4) if the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Id.* at 997.

Here, the district court clearly stated that Hooper had placed his identity at issue by arguing that he did not send the text and email messages at issue in this case. The challenged testimony described similar communications with Hooper, which was clearly probative of whether Hooper was the author of the messages in this case. Further, the district court accurately found that the prejudicial nature of the evidence did not outweigh its probative value, as the challenged evidence involved substantially the same conduct at that charged in the indictment. *See United States v. Torrez*, 869 F.3d 29 1, 302 (4th Cir.

6

2017) (stating that Fed. R. Evid. 403 does not ban bad acts evidence "where such evidence does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged").

Turning to the limiting instruction, "[t]he decision to give or not to give a jury instruction is reviewed for an abuse of discretion." *United States v. Hurwitz*, 459 F.3d 463, 474 (4th Cir. 2006) (internal quotation marks omitted). However, if we determine that the district court erred regarding an instruction, such error "warrant[s] reversal of the conviction only if the error is prejudicial based on a review of the record as a whole." *United States v. Moye*, 454 F.3d 390, 399 (4th Cir. 2006) (internal quotation marks and citation omitted). Here, the district court gave a limiting instruction as follows:

> [S]uch evidence may be properly considered to prove a defendant's modus operandi, his motive, opportunity, intent, preparation, plan, knowledge, identity – which is very much at issue in this case – or absence of mistake or accident. Please keep in mind the limited purpose for which this evidence was admitted. More importantly, do not conclude from this evidence that because the defendant allegedly engaged in past misconduct that he is more likely to have committed the crimes with which he is now charged. Okay?

(J.A. 1177). While Hooper asserts that the district court's instruction failed to instruct the jury that the evidence could not be used as proof that Hooper was a person of bad character or that Hooper committed the crimes charged,[1] we find that the instruction appropriately explained the law. Moreover, viewing the record as whole, the evidence against Hooper

---

[1] In fact, instructions given at the time the evidence was admitted specifically stated that the "evidence that the defendant engaged in past misconduct . . . [should not be used to conclude] that he is more likely to have committed the crimes with which he is now charged." (J.A. 864).

7

was so overwhelming that, even if the district court did err in giving the limiting instruction, the error was not prejudicial.

## III.

Hooper next raises a claim challenging his convictions and sentences for his two enticement convictions as multiplicitous. The first count charged enticement on May 5, 2019; the second charged enticement from April to May 2019. Hooper argues that the jury, as charged, was permitted to convict Hooper twice for the same act against the same victim on May 5, 2019, due to the overlapping dates. As Hooper asserts that the indictment would have been proper if paired with appropriate jury instructions, it appears that Hooper is actually challenging the jury instructions. However, Hooper did not object below.[2] Accordingly, review is for plain error. *United States v. Nicolaou,* 180 F.3d 565, 569 (4th Cir. 1999).

Under the plain error standard, Hooper must show: (1) there was error; (2) the error was plain; and (3) the error affected substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If the three elements are met, we may exercise our discretion to notice the error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732 (internal quotation marks omitted). Even if there was plain error, Hooper must show that the error affected his substantial rights. The burden is on Hooper to demonstrate that the plain error "actually affected the outcome of the

---

[2] Prior to the court's instructions, Hooper's counsel questioned whether one of the counts should have referenced a different victim but withdrew his comments after agreeing that instructing the jury about only one victim was helpful to his client.

8

proceedings." *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998). Thus, he must show that the jury convicted him of both counts because of the error. *See United States v. Godwin*, 272 F.3d 659, 680 (4th Cir. 2001). "[I]n order for the defense to establish that the jury misinstruction altered the outcome of the trial, it had to show that the proper instruction, on the same evidence, would have resulted in acquittal, or at the very least a hung jury." *Nicolaou*, 180 F.3d at 570.

Hooper does not attempt to make this showing, and we find that he would be unable to do so. The minor victim testified about her communications with Hooper on May 5, 2019, in which he enticed her to engage in sexual acts with him and to photograph them. In addition, Hutchens testified about her communications with Hooper throughout April and May 2019, in which Hooper used Hutchens as an intermediary to repeatedly coerce and entice Hutchens' daughter to produce child pornography. The Government introduced May 5, 2019, text messages from Hooper to the minor. The Government also introduced text and email messages from Hooper to Hutchens throughout April and May 2019, many of which were unrelated to the May 5, 2019, communications. Moreover, the Government argued to the jury that Count Three was based on Hooper's direct coercion of the minor and that Count Four was based on Hooper's coercion of the minor through Hutchens. Finally, the jury appeared to find both the minor and Hutchens credible with regard to these and similar communications, as it convicted Hooper of conspiring with Hutchens to coerce the minor into producing child pornography throughout April and May 2019. Thus, there was a plethora of evidence of coercion on dates other than May 5, and had the jury been instructed that it could not use the May 5 evidence to support a conviction on second count,

9

there is no reasonable probability that the jury would have acquitted Hooper on the second count.

IV.

Hooper next contests the district court's imposition of the two-level enhancement for his leadership role in the offense. He argues that, in child pornography cases, such enhancements are limited to sex trafficking crimes or crimes involving distribution of child pornography. Given that he conspired, coerced, and produced the images for his use only, Hooper contends that the enhancement was improper.

Hooper did not object below. Hence, his claim is reviewed for plain error. *See* Fed. R. Crim. P. 52(b); *Olano*, 507 U.S. at 731-32. A two-level enhancement for a defendant's role in the offense may be applied "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." USSG § 3B1.1(c). "[T]he aggravating role adjustment is appropriate where the evidence demonstrates that the defendant controlled the activities of other participants or exercised management responsibility." *United States v. Llamas*, 599 F.3d 381, 390 (4th Cir. 2010) (internal quotation marks omitted). In determining whether § 3B1.1 applies, "a district court should consider whether the defendant exercised decision making authority for the venture, whether he recruited others to participate in the crime, whether he took part in planning or organizing the offense, and the degree of control and authority that he exercised over others." *United States v. Rashwan*, 328 F.3d 160, 166 (4th Cir. 2003). The defendant need only have exercised control over one participant. *See* USSG § 3B1.1 cmt. n.2.

10

Hooper told Hutchens to take the photographs of her daughter. He gave Hutchens money to take her daughter and another minor to Walmart to buy underwear and other items to wear while taking pornographic photographs. He directed Hutchens to bring her daughter to his boat so he could take sexually explicit pictures of her. He instructed Hutchens to talk to other children about posing for photographs. He gave Hutchens detailed instructions on how to coerce her daughter to produce images depicting Hutchens performing oral sex on her daughter. Thus, the evidence amply supported the finding that Hooper exercised control over Hutchens, who acted on his instructions throughout April and May 2019. *See, e.g.*, *Rashwan*, 328 F.3d at 166 (concluding that defendant "exercised direction and control over the entire [marriage fraud] scheme" where defendant "initially proposed the idea of paying [a woman] to marry him so that he could obtain his green card," "was involved in planning every detail of the wedding," and "cajoled her into remaining in the marriage by promising her more money"); *United States v. Kincaid*, 964 F.2d 325, 329 (4th Cir. 1992) (upholding enhancement where co-conspirator "consummated drug transactions at [defendant's] direction, responded to [defendant's] instructions during an abduction of another drug dealer, and followed [defendant's] instructions to obtain a refund for a delivery of cocaine with which [defendant] was dissatisfied"). Thus, the district court did not err, much less plainly so, in imposing the leadership enhancement.

As he did in district court, Hooper also challenges his enhancement for obstruction of justice, asserting that it was improper to base this enhancement on his trial testimony without more specific findings. In assessing whether a sentencing court properly applied

11

the Guidelines, the district court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008). A defendant merits a two-level obstruction of justice enhancement where he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1. As the application notes clarify, the enhancement applies to perjury. USSG § 3C1.1, cmt. n.4(B). For a sentencing court to apply the obstruction of justice enhancement based upon perjury, it must find that the defendant, when testifying under oath, (1) gave false testimony (2) concerning a material matter (3) with the willful intent to deceive. *United States v. Perez*, 661 F.3d 189, 192 (4th Cir. 2011). The district court either must make a specific finding as to each element of perjury or must provide a finding "that clearly establishes" each of the elements. *Id.* at 193 (emphasis omitted).

Here, the district court did exactly that. The district court specifically found the perjury "material" and that it was made with the intent to deceive. While the court did not state exactly what parts of Hooper's testimony were false, it is clear that the court found all of Hooper's testimony regarding the material issues in dispute to be false. As such, the district court did not err in applying the obstruction of justice enhancement.

Hooper also contends that his life sentence is disproportionate to Hutchens' 23-year-sentence following her guilty plea to production of child pornography and, thus, must have been based on vindictiveness for his refusal to plead guilty. However, the simple fact that a co-conspirator who chose to plead guilty received a lesser sentence is not sufficient to

12

support a claim of vindictiveness or a violation of due process.  *United States v. Brainard*, 745 F.2d 320, 323-24 (4th Cir. 1984).

V.

Next, Hooper contends that his within-Guidelines life sentence was unconstitutionally harsh and violated the Eighth Amendment.  The Eighth Amendment prohibits cruel and unusual punishment, which includes both "inherently barbaric" punishment and punishment that "is disproportionate to the crime for which it is imposed." *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014).  The "narrow proportionality principle of the Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotation marks omitted).  "Before an appellate court concludes that a sentence is grossly disproportionate based on an as-applied challenge, the court first must determine that a threshold comparison of the gravity of the offense and the severity of the sentence leads to an inference of gross disproportionality." *Id.* (internal quotation marks omitted).  "In the rare case that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions." *Id.* (internal quotation marks omitted).

A finding of disproportionality is extremely rare, and the Supreme Court has found a sentence of life without parole to violate the Eighth Amendment only once, where a recidivist defendant pleaded guilty to uttering a "no account" check for $100. *United States v. Dowell,* 771 F.3d 162, 168 (4th Cir. 2014); *see Cobler,* 748 F.3d at 580 (rejecting

13

disproportionality claim finding "multiple child pornography crimes are at least as grave as" crime involving possession of 672 grams of cocaine, "which the Supreme Court deemed sufficiently egregious to justify a similar sentence" in *Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)). Likewise, we have not identified a grossly disproportionate life or putative life sentence in at least the past 35 years. *United States v. Said,* 798 F.3d 182, 198 (4th Cir. 2015) (finding mandatory life sentence for piracy not grossly disproportionate).

Based on these principles, we find that the district court did not err in rejecting Hooper's arguments. As we noted in *Cobler*, Congress determined that child pornography is harmful to the psychological and emotional health of children. 748 F.3d at 580. While Hooper argues that he never distributed the child pornography, the gravity of his offenses was extremely significant. Hooper preyed on a financially insecure family, using a child's mother to gain access to her teenage daughter and other minor girls. He pressured the minor victim to pose for pictures depicting increasingly graphic sexual activity with the promise that she could earn the money she needed to attend a school trip and a concert. He went so far as to direct Hutchens to convince her daughter to submit to taking pictures of her mother performing oral sex on her. Hooper's coercion and enticement of the minor, both directly and through her mother, was "at least as grave as the drug offense in *Harmelin*." *Cobler*, 748 F.3d at 580. Further, Hooper's relevant conduct included sexual intercourse with the minor, and his past included similar behavior, coercing and enticing teenage girls to produce child pornography. *See, e.g., United States v. Mills*, 843 F.3d 210, 218 (5th Cir. 2016) (reasoning that "[t]he sentencing court appropriately took into account [defendant's] past pattern of behavior" involving a minor victim at sentencing for

14

convictions of coercion and enticement); *United States v. Cardenas-Alvarez,* 987 F.3d 1129, 1134 (5th Cir. 1993) (finding that Guidelines are a "convincing objective indicator of proportionality"). Thus, we conclude that Hooper has failed to make the necessary showing of gross disproportionality.

VI.

Over six months after the jury's guilty verdicts, Hooper filed two pro se motions: the first for a new trial due to new evidence and the second alleging prosecutorial misconduct. The district court denied the motions, finding that the motions were untimely and were improperly filed by a defendant who was represented by counsel. On appeal, Hooper asserts that, by titling his motions "pro se" motions, he was unequivocally requesting to represent himself and that the district court erred by failing to hold a hearing on his request.

Although a criminal defendant has the right to represent himself at trial, *Faretta v. California*, 422 U.S. 806, 819-20 & n.15 (1975), his assertion of that right must be "(1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely." *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005). However, given that the right to counsel and the right to self-representation are in tension, "the right to counsel is preeminent and hence, the default position." *United States v. Ductan*, 800 F.3d 642, 649 (4th Cir. 2015). A court presumes that a defendant should proceed with counsel absent an "unmistakable expression" to the contrary by the defendant. *Id.* at 650.

Hooper's motions did not constitute unequivocal and unmistakable requests. In fact, they were not requests at all, as Hooper did not state that he wished to represent himself

15

nor did he ask the court to permit him to do so.  Instead, Hooper appeared to want to raise issues that his attorney would not.  Given that Hooper was represented by counsel and made no explicit request to represent himself, the district court did not err in denying his pro se motions without holding a hearing.

## VII.

Finally, Hooper has filed pro se motions to file a supplemental brief and to appoint/assign counsel.  His supplemental brief reargues his counsel's claims but purports to add necessary context.  His request for counsel appears to be a request for 28 U.S.C. § 2255 counsel and for an attorney to investigate his claims of judicial bias and new evidence.

Hooper's motion to file a supplemental brief is denied, as he is represented by counsel.  *See United States v. Penniegraft*, 641 F.3d 566, 569 n.1 (4th Cir. 2011) (denying defendant's motion to file pro se supplemental brief because defendant was represented by counsel); *see also United States v. Cohen*, 888 F.3d 667, 682 (4th Cir. 2018).  Turning to his motion for appointment of counsel, his request for § 2255 counsel is premature and that he is not entitled to appointment of counsel to assist him in investigating his claims prior to filing a § 2255 motion.

Thus, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*

16